A96A0389. STEGALL et al. v. CENTRAL GEORGIA ELECTRIC MEMBERSHIP CORPORATION.
(470 SE2d 782)

BIRDSONG, Presiding Judge.

Appellants Michelle and Bob Stegall appeal from the order of the superior court granting summary judgment to appellee Central Georgia Electric Membership Corporation (EMC). This is a suit for money damages for the full value of the life of appellants' six-month-old child who in August 1994 was electrocuted in the improperly grounded mobile home which appellants rented; electricity to the home was being provided by EMC.

In September 1993, appellants Michelle and Robert Stegall rented and moved into a mobile home owned by and located in the trailer park of defendant David Buice. Within a couple of weeks thereafter, appellants noticed they were receiving an electric shock of a "tingling" nature whenever, for example, they simultaneously touched two pieces of metal in or on the mobile home. Appellant Michelle Stegall reported this situation repeatedly to defendant Buice to no avail. On June 1, 1994, she telephonically reported the matter to an EMC office. The EMC employee who received the call sent a trained EMC service technician, Donald Yost, to the premises. Yost was informed of the circumstances under which appellees were receiving shocks both inside and when entering the mobile home. Yost tested several areas of the mobile home and determined that the voltage reading being obtained ranged from 95 volts to 105 volts. Yost considered this a hazardous condition which had the potential to injure seriously or kill someone. Yost conducted further tests and concluded that the problem originated either from the main inside the mobile home or one of the circuits that feeds the mobile home. He continued his inspection until he found that shutting off one particular circuit breaker caused the voltage reading to register zero. Monroe County does not have any governmental inspectors to whom

Yost could report the problem. While Yost did not report the problem directly to his supervisor, he followed normal procedure and filed his report with the EMC dispatcher for entry into the trouble log. Although he had the authority immediately to shut off the power to the mobile home, or to cause a notice letter to be written by EMC's engineering department stating electricity would be cut off if the deficiency was not corrected within a certain time period, he did not do so. Rather, Yost personally informed Michelle Stegall of how dangerous the situation was, told her that his friend had been killed by that same level of voltage, and advised her not to turn the circuit breaker back on until someone had checked and repaired it. Yost is not an electrician and is not licensed to make such repairs. Appellant Michelle Stegall discussed the situation with Yost and caused him to believe she was going to call David Buice and tell him that someone needed to look at the circuit which had been cut off. She also caused him to believe she had called EMC as a last resort, although she did not tell him she had repeatedly called David Buice previously to no avail. Although he could have done so, Yost made no re-inspection of the premises to determine if the problem had been corrected, and neither did he request that someone else in EMC make a follow-up call; such procedures are not required and he has never done this in the past.

EMC policy no. 305 pertinently provides: "Each member is responsible for all premises receiving electrical service to become and remain wired in accordance with the specifications and requirements of the Central Georgia EMC, the National Electrical Code, the National Electrical Safety Code, and any requirements of local government agencies having jurisdiction over the installation of electrical wiring. . . . In the event of a known hazardous condition or potentially hazardous condition because of a violation of requirements, electrical service will not be connected until the condition is corrected. In the event service is being received, the member will be notified by certified mail or personal delivery, with copy to County or City Inspections Departments, if applicable, that if deficiencies are not corrected within a stated time, service may be discontinued. Employees noting unsafe conditions should notify their immediate supervisor who will take appropriate action to follow up on circumstances. *Responsibility*: All Employees." Yost identified and professed familiarity with EMC policy no. 305; however, it was his understanding that the policy did not apply to problems outside EMC's area of responsibility, that is, it applies to conditions existing in EMC lines and equipment located outside the customer's home.

Although he did not fix the circuit deficiency, Yost also testified that after he had turned off the circuit breaker he informed Michelle Stegall of the nature of the danger, informed her that if the circuit

breaker was turned on before being fixed that lives would again be in danger, and advised her of the corrective action that needed to be taken. She appeared to understand the seriousness of the situation. Michelle Stegall stated in an affidavit that she did not understand the shock she was receiving could kill anyone; and, while Yost did tell her a friend of his had been killed by "120," she did not understand the person had been killed under conditions similar to those in her trailer or that "120 had anything to do with our trailer." As long as the breaker was switched off, there no longer existed a life-threatening condition in the mobile home. In fact, Michelle Stegall confirmed that she received no electrical shocks while the breaker was off.

Michelle Stegall called Buice who initially sent a man named "Peanut" Price to the trailer. Michelle testified by way of deposition that the breaker had remained off since the visit of Yost until after Price arrived on the premises. Buice and Price replaced all the receptacles on the identified circuit. Buice states that the defective circuit breaker was on when he initially arrived at the trailer. Michelle Stegall testified inter alia that the breaker was not on when Buice first arrived but she later turned it on after Price told her to do so and instructed her she could keep it on; thus, the breaker was on when Buice returned to the trailer the next day. Buice testified by way of deposition that the electrical system seemed to be working properly after the receptacles were changed and at no time, either before or after the repairs, had he received a shock from the trailer. Michelle Stegall testified that within a day or two following the repairs she again received electrical shocks from touching objects in the premises; she called and reported the situation to Buice. She also testified that, although Yost had told her to keep the circuit off, Buice then told her she could turn it on because she needed air conditioning but to "stay away from the thing," and that he would have it fixed. Thereafter, she kept the circuit breaker on for two months, until the child was electrocuted. Buice admits he may have told her that she could turn on the circuit after the receptacles were changed; in any event, when he left the premises he knew the circuit was on. Buice, however, asserts he never heard anything more about the situation from appellants until after their daughter was killed.

Following the repairs made by Buice and Price, no one ever called Yost or EMC to report that the detected problem still existed, until after the child was killed on August 9, 1994. Yost went back to the premises to assist the sheriff in his investigation; the circuit breaker was turned on and the same voltage problem originating from the same circuit occurred. The breaker was turned off, and once again the dangerous condition was abated. Appellants were still residing in the trailer at the time their depositions were taken, and appellant Michelle Stegall believed that the previously existing dan-

gerous condition was no longer dangerous as Candy, an independent master electrician, had looked at the circuit breaker and had in some fashion "turned it off."

Subsequent to the child's death and at the request of the sheriff's department, Candy examined the premises and opined that the child's death occurred because the mobile home was not properly grounded; there was no ground wire attached to the ground bus inside the mobile home and there was no ground rod driven into the soil outside the home. This improper grounding violated the National Electric Safety Code. An EMC supervisor testified that under EMC policy if a serviceman goes to a premise and knows there is not a driven ground rod grounding the meter base, either he should not hook up the electric service or he should discontinue any existing service; however, it may not be known whether there exists a driven ground rod because specifications require the rod to be 18 inches underground. Candy drove a ground rod outside the trailer and connected the ground bus inside the service panel to the proper ground.

Appellants enumerate five errors. *Held*:

1. The applicable summary judgment standard is that of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474).

2. Pretermitting whether EMC owed a duty of care to appellants and their deceased child and if so, whether they breached such duty (compare *Hatcher v. Ga. Power Co.*, 40 Ga. App. 830 (151 SE 696)), is the question whether any existing breach of duty by EMC was a proximate cause of the child's death (compare *Ga. Power Co. v. Kinard*, 47 Ga. App. 483, 486 (170 SE 688)).

"Except in plain, palpable and undisputed cases where reasonable minds cannot differ as to the conclusions to be reached, questions of negligence, proximate cause, including the related issues of foreseeability, assumption of risk, lack of ordinary care for one's own safety, lack of ordinary care in avoiding the consequences of another's negligence, contributory and comparative negligence are for the jury." *Wade v. Mitchell*, 206 Ga. App. 265, 268 (4) (424 SE2d 810). The proximate cause requirement constitutes a limit on legal liability; it is a policy decision that for a variety of reasons, such as an intervening act, the defendant's conduct and the plaintiff's injury are too remote for the law to countenance recovery. *Atlanta Obstetrics &c. v. Coleman*, 260 Ga. 569 (398 SE2d 16). We find based on plain, palpable, and undisputed evidence of the conjunctive intervening acts of parties other than EMC that, as a matter of legal policy, the acts or omissions of EMC were not the proximate cause of the child's death; EMC's conduct and the appellants' injury are too remote for the law to countenance recovery. While, "[t]he mere negligence of a third person in failing to guard against the defect or specific act or omission of the defendant which caused the injury will not constitute

an intervening efficient act which will relieve the defendant from liability . . . where the evidence[, as in this case,] plainly and manifestly shows that the injury was caused by the intervening efficient act of the third person or the conjunctive acts or omissions of such person and the plaintiff, the defendant cannot be held responsible for having produced the injury, and the question is then one of law for determination by the court, and not one of fact for the jury." *Kinard,* supra at 486 (3); cf. *Stroud v. Willingham,* 126 Ga. App. 156 (190 SE2d 143). We find from the undisputed evidence of record that when Yost departed the premises, the defective circuit breaker had been turned off and Michelle Stegall had been adequately warned of the dangerous nature of the previously existing condition and of those steps necessary to be taken before the circuit was turned on. The acts and statements of third parties which resulted in the breaker being turned on over two months later by a person or persons other than an agent of EMC, constituted an intervening act that, as a matter of law, was not foreseeable to EMC particularly in view of the detailed warning given Michelle Stegall by Yost. Even if a negligent breach of duty had occurred by defendant's agent in June 1994, we further find as a matter of law that it would have been too remote, under the existing circumstances of this case, for the law to countenance a recovery by either of the appellants/plaintiffs. *Shaffer v. Ga. Power Co.,* 128 Ga. App. 84 (195 SE2d 758); *Wooten v. Central Ga. Elec. &c. Corp.,* 214 Ga. App. 290 (447 SE2d 672). Although this is a case of most tragic consequences, "the appellate process affords us no latitude to make adjustments for the ill-earned good fortune of the lucky or the heart-rending misfortune of the unlucky [cit.]." *Floyd S. Pike Elec. &c. v. Williams,* 207 Ga. App. 86, 89 (2) (e) (427 SE2d 67). It is the duty of this Court to see that justice is fairly dispensed to all parties concerned, and this creates an equally important judicial obligation not to render judgments born only of generosity or compassion.

In view of the above holding, we decline to address each of appellants' enumerations of error seriatim; a grant of summary judgment must be affirmed if it is right for any reason. *Malaga Mgmt. Co. v. John Deere Co.,* 208 Ga. App. 764, 767 (5) (431 SE2d 746).

*Judgment affirmed. Beasley, C. J., and Blackburn, J., concur.*

DECIDED APRIL 24, 1996 — ■

*Evans & Evans, Larry K. Evans, Crumbley & Chafin, R. Alex Crumbley,* for appellants.

*Haygood, Lynch, Harris & Melton, C. Robert Melton, Kushinka, Calhoun & Godwin, George Kushinka,* for appellee.