A99A1646. TUDOR v. FORD.
(530 SE2d 474)

ANDREWS, Presiding Judge.

Pursuant to the grant of an interlocutory appeal, we review the denial of summary judgment to Tudor in Ford's premises liability case.

In reviewing the grant or denial of summary judgment, a de novo standard of review is applied, and we view the evidence with all reasonable inferences and conclusions in favor of the party opposing summary judgment. *Goring v. Martinez*, 224 Ga. App. 137, 138 (2) (479 SE2d 432) (1996); *Gaskins v. Hand*, 219 Ga. App. 823 (466 SE2d 688) (1996).

So viewing the evidence presented on summary judgment in favor of Ford, it was that, in July or August 1996, Tudor took over the duties of general contractor on the Tudors' new home. While a large part of the work had been completed, additional brick work, painting, and some carpentry remained to be finished. Ford and Tudor orally agreed that he and his crew would complete the masonry work on the weekends. The Tudors had a construction dumpster on the premises, and, at least once a day, Tudor, her husband, and/or their sons visited the site and walked the premises, picking up debris. Also, the Tudors hired a man with a tractor to grade the land and dump trash into the dumpster twice, once before Ford was on the job.

According to Ford, he, his son, and two others worked on the

Tudor property three weekends in August,[1] the final weekend being August 17, 1996. Ford described the construction site as having bricks and debris, and "[n]ails [were] on the ground all the way around the house." Ford also stated that there were nails in the carport and all around the house, some loose and some in boards. Howard, one of Ford's co-workers on the project, described the area as containing nails in two-by-fours "like normally [would] be on any construction job," and "like a regular normal construction site, guys step on nails all the time. . . ."

On his last day on the job, Ford came out of the carport to go to the front of the house and stepped on a finishing nail sticking out of a piece of fascia board, partially covered by grass. Ford was talking to one of his workers while walking and did not see the nail before stepping on it. Ford acknowledged, however, that if he had stopped and looked, he would have seen the nail. Although he was wearing work boots with an inch to inch and a half soles, the nail penetrated the sole and the large toe of his left foot. Ford pulled the nail out of his foot and continued working. He did not mention the incident to anyone else, including the Tudors. He did not keep the piece of fascia board or the nail, and there is nothing in the record to indicate the condition of the board and nail at the time Ford stepped on it.

Ford's foot began to throb on August 18, and he went to Dr. Thigpen on August 23. Dr. Thigpen, a family practitioner, had diagnosed Ford with diabetes in September 1995. Ford was on medication and was given a home glucose monitor. He returned to Dr. Thigpen on October 18, 1995, with his diabetes under control and was to return in four months. He did not return until his visit on August 23, 1996. At that time, Dr. Thigpen noticed that his left foot was swollen and red. Because diabetics often do not feel their feet and can damage them without being aware, Dr. Thigpen specifically asked Ford if the foot had experienced any trauma, and Ford denied any. Ford acknowledged that he had been out of his diabetes medication for the past couple of months, and, according to Dr. Thigpen, his diabetes was "out of control."

Dr. Thigpen's examination of Ford's left foot revealed a small ulceration with discharge at the base of the second toe, not the large toe. According to Dr. Thigpen, there was no way to know if this ulcer was a blister that had ruptured or was secondary to trauma. Dr. Thigpen was unable to say, with any reasonable degree of medical certainty, that Ford's problem was due to stepping on a nail. Ford was admitted to the hospital on August 24 with a diagnosis of "severe

---

[1] Ford and the others worked as masons during the week for a contractor on another job.

cellulitis of the left foot secondary to diabetic neuropathy." Dr. Rothwell, a surgeon, examined Ford on August 25 and found an infected left foot and a draining sore on Ford's right big toe which Ford said had been there several months. Ford denied any trauma to the left foot to Dr. Rothwell. The third toe of Ford's left foot was dead and rotten. According to Dr. Rothwell, this was the probable source of the massive infection, which went to the bone and eventually required the amputation of the left leg below the knee. According to Dr. Rothwell, infection requiring amputation can occur in diabetics without any kind of trauma, and he could not say with any degree of medical certainty that the problems were due to a puncture wound in the left big toe. Additionally, gangrene can occur "amazingly rapidly" in a diabetic.

1. To recover,

> "an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier. However, the plaintiff's evidentiary proof concerning the second prong is not shouldered until the defendant established negligence on the part of the plaintiff — i.e., that the plaintiff intentionally and unreasonably exposed self to a hazard of which the plaintiff knew or, in the exercise of ordinary care, should have known." *Robinson v. Kroger Co.*, 268 Ga. 735, 748-749 (493 SE2d 403) (1997).

*Hopkins v. Kmart Corp.*, 232 Ga. App. 515, 516 (502 SE2d 476) (1998) (physical precedent only).

(a) Here, there is no evidence presented indicating that Tudor had actual knowledge of the presence of the board and nail.

(b) Regarding constructive knowledge, Tudor has presented evidence that she and members of her family engaged in a daily inspection and cleanup routine on the construction site. This satisfies the defendant's initial burden of demonstrating the exercise of reasonable care in inspecting the premises and shifts the burden to Ford to demonstrate how long the hazard had been present. *Hopkins*, supra; *Anderson v. Svc. Merchandise Co.*, 230 Ga. App. 551, 553 (496 SE2d 743) (1998); *Gleaton v. APAC-Ga.*, 228 Ga. App. 52, 54 (2) (491 SE2d 138) (1997).

As set out above, the record is devoid of any evidence indicating how long the board and nail had been present on site, and therefore, Ford has failed to show Tudor's constructive knowledge of the hazard which would prevent summary judgment.

2. Further, even assuming that Tudor's knowledge had been shown, Ford's knowledge of the condition of the premises and the hazards posed by a construction site was equal to Tudor's. Ford, acknowledged that there were nails and boards with nails "all the way around the house." Compare *Gleason v. Hagemeister*, 235 Ga. App. 389, 391-392 (509 SE2d 704) (1998) with *Gateway Mgmt. Co. v. Sutton*, 189 Ga. App. 296 (375 SE2d 462) (1988).

3. Additionally, upon de novo review, we conclude that, viewing the medical evidence presented in the light most favorable to Ford, there is another legal basis upon which the defendant was entitled to summary judgment. Neither of the doctors who treated Ford was able to conclude that the nail puncture was a causative factor in the condition of his left foot. Rather, both doctors concluded that Ford's diabetes was out of control and was the primary cause of the loss of his lower leg.

> The proximate cause requirement constitutes a limit on legal liability; it is a policy decision that for a variety of reasons, such as an intervening act, the defendant's conduct and the [plaintiff's] injury are too remote for the law to countenance recovery. [Cit.]

*Stegall v. Central Ga. Elec. Membership Corp.*, 221 Ga. App. 187, 190 (2) (470 SE2d 782) (1996).

Therefore, this is one of those "plain, palpable and undisputed cases" in which the defendant, Tudor, was entitled to summary judgment.

*Judgment reversed. Ruffin and Ellington, JJ., concur.*

DECIDED MARCH 2, 2000 — 

*Gorby, Reeves, Peters & Burns, Michael S. Reeves, Terrell W. Benton III*, for appellant.

*Edwards & Youmas, Lonzy F. Edwards*, for appellee.