## A09A1563. NOSIRI et al. v. HELM.
### (687 SE2d 635)

BARNES, Judge.

On November 12, 2003, Diana Helm was injured when she tripped over wires at Systems Alert Security, Inc., where she worked as a telemarketer. Helm sued Systems Alert and Benjamin Nosiri (hereinafter collectively "Nosiri") alleging negligence in that the wires "were strung across the floor in such a manner as to make it hazardous to . . . traverse the floors of the business premises." Nosiri filed a motion for summary judgment maintaining, among other things, that he was entitled to judgment as a matter of law based on undisputed facts showing that Helm had equal or superior knowledge of the alleged hazardous conditions, and that she had assumed the risk incident to the hazardous conditions. The trial court denied the motion without explanation, and subsequently granted a certificate of immediate review. We granted Nosiri's application for interlocutory appeal, and this appeal followed.

On appeal, Nosiri contends that the trial court erred in finding that he had superior knowledge of the hazard, and that Helm had not assumed the risk of the injury by repeatedly traversing the hazardous condition. He also maintains that the trial court erred in concluding that alleged violations of federal and state safety regulations were relevant to the claim, and in concluding that Nosiri admitted negligence by saying that he felt responsible for the incident and would pay Helm's medical bills. Upon our review, we hold that the court properly denied summary judgment to Nosiri in view of disputed issues of material fact.

We review the grant or denial of a motion for summary judgment de novo, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant. *Norton v. Cobb*, 284 Ga. App. 303-304 (643 SE2d 803) (2007).

So viewed, the evidence shows that Helm was an independent contractor at Systems Alert working as a telemarketer. Her left leg was amputated below the knee at a young age, so she wore a prosthesis. Before the incident at issue, Helm expressed her concern to Nosiri about the various wires that lay across the floor in her work area, including one from Nosiri's radio, which was sitting on the floor, and one from Nosiri's cell phone charger, both of which lay across Helm's path when they were plugged into the wall socket.

Helm told Nosiri she was concerned about the cords being in her

way because of her prosthetic limb, and he told her she "had to deal with it if [she] wanted to work there." Helm testified, "It was the little, bitty wires I was afraid of." When asked during her deposition if there were times when her balance was "a little out of whack" because of her prosthetic limb, she explained, "When you wear an artificial limb where you've got to walk, you're always in visual of the terrain. [sic] You're always, because the terrain can trip you up, whether you're walking on rocks or hills or if there's a little, bitty step like that. I mean, it can trip an amputee up."

Helm last moved the cell phone cord from her path the day before she fell. She could not say the cord was in her way every single day, but when it was, she would move it. The morning she fell, Nosiri and his partner were standing in the narrow pathway of the office, possibly standing on the cell phone cord, when she passed them with paperwork in her hand, through what she characterized as "a very tight squeeze." The office was narrow with a wooden partition down the middle, and with the men standing there, "it was hard to get through." After squeezing by the men twice, she turned to pass them again and her prosthetic leg, which was held to her stump by suction, came out of its socket. Helm fell, hitting first on the end of her stump and then on her shoulder. After asking the men to leave so she could remove her pants to determine if she was bleeding, Helm discovered that the cell phone cord was wrapped around her prosthetic foot. She probably did not notice the cord before she fell because Nosiri and his partner were standing there.

1. "The trial court can conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff only where the evidence is plain, palpable and undisputable. [Cit.]" *Robinson v. Kroger Co.*, 268 Ga. 735, 739 (493 SE2d 403) (1997). "[I]t is the plaintiff's knowledge of the specific hazard precipitating a slip and fall which is determinative, not merely [her] knowledge of the generally prevailing hazardous conditions or of hazardous conditions which plaintiff observes and avoids." (Punctuation and footnote omitted.) *Barton v. City of Rome*, 271 Ga. App. 858, 861 (610 SE2d 566) (2005).

Here, while there is no question that Helm was aware of the existence of the cell phone cord the day before her fall and the other days that she moved it, there is no evidence that she was aware of its exact position at the time it tripped her. Therefore, "there exists a question of fact whether [Helm] was aware or should have been aware of the continuing nature of the hazard." *Reid v. Southern Bell Tel. &c. Co.*, 182 Ga. App. 524, 525 (356 SE2d 77) (1987). "Whether [Helm] exercised that duty of care commensurate with her knowledge . . . is a circumstance to be considered by the jury in determining if appellant exercised due care for her personal safety." Id.

As noted in *Robinson v. Kroger Co.*, "[w]hat constitutes a reasonable lookout depends on all the circumstances at the time and place." 268 Ga. at 742. It is for the jury to determine whether, after moving the cell phone cord the day before she fell, and not seeing it the day she fell, possibly because Nosiri and his partner were standing on it, blocking her path and her view of the floor, Helm should, nevertheless, have been more vigilant for her own safety. "The decision whether to recognize [Helm's] theory of recovery as valid under Georgia premises liability law is precisely the type of legal policy judgment we instructed in *Robinson* must be left to a jury to decide in light of all the attendant circumstances." *American Multi-Cinema v. Brown*, 285 Ga. 442, 446 (679 SE2d 25) (2009).

2. Regarding Nosiri's argument that Helm assumed the risk of injury by walking across the allegedly hazardous condition despite knowledge of it, "[e]xcept in plain, palpable and undisputed cases where reasonable minds cannot differ as to the conclusions to be reached," questions of contributory negligence and assumption of risk are for the jury. (Citation and punctuation omitted.) *Stegall v. Central Ga. Elec. Membership Corp.*, 221 Ga. App. 187, 190 (2) (470 SE2d 782) (1996).

Here, issues of material fact exist as to whether Helm assumed the risk of her injuries in that despite actual knowledge of the danger presented by the wires, and understanding and appreciating the risks associated with the wires, she, nonetheless, voluntarily exposed herself to the risk of walking over the wires. See *Gaines v. Ingles Markets*, 241 Ga. App. 302, 303 (1) (524 SE2d 766) (1999).

3. Because of our decision in Divisions 1 and 2, and because the trial court did not specifically address Nosiri's contentions regarding federal and state workplace safety regulations, or conclude that Nosiri admitted negligence by offering to pay medical bills, the remaining enumerations are moot.

*Judgment affirmed. Miller, C. J., Blackburn, P. J., Ellington and Mikell, JJ., concur. Andrews, P. J., and Johnson, P. J., dissent.*

ANDREWS, Presiding Judge, dissenting.

Ms. Helm explained the circumstances of her fall in her deposition testimony. Helm said that she had worked at Systems Alert Security, Inc. for over three months at the time of her fall. Because she had a prosthetic limb attached below her left knee, Helm said that, prior to her fall, she had expressed concern every day at work about the tripping hazard posed to her by the cell phone cord that she could see running across the floor near the area where she walked back and forth from her desk. She said that the cord ran from a cell phone charger which was always plugged in near her work area. It is undisputed that this same cell phone cord caused Helm's

fall. When she fell, Helm "noticed the cell phone cord had wrapped around my stump and my foot," causing her prosthesis to detach from her leg and causing her to fall.

Helm was explicit about her prior knowledge of the cell phone cord which caused her fall. She testified that "every day" she was at work she saw the cord in the same location and complained to Mr. Nosiri (part owner of Systems Alert) about it, and that she had to move the cord out of her way "every day." In response to deposition questioning about the cord, Helm testified:

A: The cell phone — there's a plug here, and the cell phone charger was always plugged up here . . . and like I said, it was all right there, and every day this cord was there and I'd say something to Ben [Nosiri] about it, and I'd move it.
Q: The cell phone cord?
A: The cell phone cord. Now, I would be the one to move it out of the way . . .
Q: The plug that you indicated, you said there was a cell phone that had been there for a couple of days?
A: Uh-huh.
Q: And that's where —
A: Well, it was there all the time . . .
Q: Now you said the wires from the cell phone cord had always been there?
A: Every day I had to move them out of the way. It was the little bitty wires I was afraid of.
Q: Okay. And they were there that morning then when you came in, correct?
A: Evidently.

The deposition continued with Helm again confirming that she knew and complained about the phone cord "every day" at work, and that she had complained about and moved the cord the day prior to her fall. Helm later altered her testimony by stating that the cord was there "just about every day," but that she could not say it was there "every single day."

Helm's deposition testimony further shows that, just prior to her fall, she walked across the phone cord twice before she caught her prosthesis on the cord and fell while walking across it a third time. Helm testified that, just prior to falling, she walked from her desk to another desk and then back toward her desk while twice crossing the area where the phone cord ran. In walking across the area, Helm said that she had to pass in a "tight squeeze" between Nosiri and his partner who were standing in the area. She testified that, after she

YALE LAW LIBRARY

passed between Nosiri and his partner for the second time, she remembered something and turned back around, and that, as she passed between them for the third time, she fell. According to Helm, because Nosiri and his partner were standing there, "it's probably why I didn't notice [the phone cord]." Contrary to the majority opinion, Helm did not testify that Nosiri and his partner were "possibly standing on the cell phone cord." Rather, Helm testified that, "I don't know if somebody was standing on [the cord]."

Helm, who worked as an independent contractor, sued Systems Alert and Nosiri for injuries she incurred when she tripped on the cell phone cord and fell, alleging that they negligently failed pursuant to OCGA § 51-3-1 to keep the work premises safe. *Amear v. Hall*, 164 Ga. App. 163, 166 (296 SE2d 611) (1982) (independent contractor treated as an invitee to whom premises owner or occupier owed duty under OCGA § 51-3-1 to keep the work premises safe). Systems Alert and Nosiri claim that the trial court erred by denying their motion for summary judgment because the record shows that Helm's knowledge of the tripping hazard posed by the cell phone cord was at least equal to their knowledge of the hazard.

The Supreme Court reaffirmed in *Robinson v. Kroger Co.*, 268 Ga. 735, 736-738, 740 (493 SE2d 403) (1997), that the fundamental basis for imposing liability under OCGA § 51-3-1 on the premises owner or occupier is proof that the owner/occupier had superior knowledge of the hazard. In explaining why an owner/occupier without superior knowledge is entitled to summary judgment, *Robinson* cited to a line of cases where the invitees admitted knowledge of the hazard. Id. at 737. In those cases, "the evidence was undisputed that the plaintiff had knowledge of the hazard equal to or greater than that of the owner/occupier, making it impossible for the plaintiff to prove that the owner/occupier had the superior knowledge necessary for the plaintiff to prevail." Id. As an example of this type of case, *Robinson* cited *Gateway Mgmt. Co. v. Sutton*, 189 Ga. App. 296, 298 (375 SE2d 462) (1988), and explained that in *Sutton* "[a] plaintiff who had complained about the presence of construction debris on [an] apartment complex's grounds and who had just walked through [the] debris-strewn area in which she fell had intimate knowledge of the risk and chose to assume that risk." (Punctuation omitted.) *Robinson*, 268 Ga. at 737. According to *Robinson*, a plaintiff's behavior in cases like *Sutton* "constituted 'voluntary negligence,' classified by the Second Restatement of Torts as a 'type' of contributory negligence: 'an intentional and unreasonable exposure of the plaintiff to danger created by the defendant's negligence, of which danger the plaintiff knows or has reason to know.' " (Citation and punctuation omitted.) Id. at 737-738; accord *City of Winder v. Girone*, 265 Ga. 723, 724-725 (462 SE2d 704) (1995)

(because fall resulted from a hazard on the premises of which plaintiff was aware, plaintiff was barred from recovery for failure to exercise ordinary care for her own safety).

The evidence is undisputed that Helm had actual knowledge of the hazard posed by the cell phone cord which her deposition testimony established she saw in the same location every day; complained about every day; and moved every day during the three months that she worked for Systems Alert.[1] On the day of her fall, Helm obviously did not move the cord, but instead chose to walk across the area where she knew the cord was located.[2] Assuming Systems Alert and Nosiri had knowledge of the hazard, because the evidence plainly, palpably, and undisputably shows that Helm's knowledge of the hazard was at least equal to that of Systems Alert and Nosiri, Helm cannot prove the fundamental element necessary to establish her claim — that Systems Alert and Nosiri had superior knowledge of the hazard. *Robinson*, 268 Ga. at 736-738, 740. Moreover, the undisputed evidence shows that Helm's recovery was barred by her own "voluntary negligence" when she knowingly exposed herself to the hazard posed by the phone cord she knew was there. Id. at 737-738; *City of Winder*, 265 Ga. at 724-725. The trial court erred by denying summary judgment to Systems Alert and Nosiri. *Robinson*, 268 Ga. at 737; *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Despite undisputed evidence that Helm knew the phone cord was in the same location every day, the majority opinion concludes that "there is no evidence that she was aware of its exact position at the time it tripped her" (because people were standing in the area), and therefore a factual issue existed as to whether Helm was "aware of the continuing nature of the hazard." This construes the "equal knowledge" and "voluntary negligence" defenses set forth in *Robinson*, supra, so narrowly as to virtually eliminate the owner/occupier's right to summary judgment. Surely an invitee with undisputed knowledge that a specific hazard occurs every day at the same location on a premises cannot choose to walk across the hazard at that location, incur an injury, and then avoid summary judgment on a damages

---

[1] Helm's altered testimony, given without explanation, that the hazard occurred "just about every day," and that she could not say it was there "every single day," contradicted her repeated testimony that the hazard occurred "every day" she was at work. Pursuant to *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27-30 (343 SE2d 680) (1986), Helm's self-contradictory testimony must be construed against her for purposes of summary judgment.

[2] This is not a case where a jury issue exists as to whether Helm had no choice but to encounter the hazard as a condition of her work. Rather, the record shows that, on prior occasions, she avoided the hazard by simply moving the cord. *Gillis v. Foodonics Intl.*, 273 Ga. App. 759, 760-761 (615 SE2d 854) (2005).

claim by simply declaring that, "When I tripped and fell on the hazard I knew was there, I had no knowledge of its *exact position* because someone was blocking my view." I respectfully dissent.

I am authorized to state that Presiding Judge Johnson joins in this dissent.

DECIDED DECEMBER 1, 2009 — 

*Freeman, Mathis & Gary, Jacob E. Daly*, for appellants.
*Albert M. Yates III*, for appellee.