**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 28, 2016**

# In the Court of Appeals of Georgia

A15A2324. TESTON et al. v. SOUTHCORE CONSTRUCTION, INC.

RAY, Judge.

Angela Teston and her husband sued Southcore Construction, Inc. seeking to recover from injuries she sustained when Teston tripped and fell over electric cords that were exposed during an office renovation. After discovery, the trial court granted Southcore's motion for summary judgment. Teston appeals from that order. For the following reasons, we reverse the trial court's grant of summary judgment.

We review the grant of a summary judgment motion de novo, viewing the evidence and all reasonable inferences and conclusions drawn from it in the light most favorable to the nonmovant. *Nosiri v. Helm*, 301 Ga. App. 380, 380 (687 SE2d 635) (2009).

The facts show the following: At the time of her fall, Teston was an employee of TitleMax of Georgia, Inc. The TitleMax store front housed two related businesses, TitleMax and Equity Auto Loan, a/k/a Instaloan, which are both subsidiaries of TMX Finance, LLC. The store was "divided pretty evenly straight down the center," with TitleMax employees' desks on the right side of the room and Equity Auto Loan employees' desks on the left side. The desks and furniture on the two sides of the room were arranged in nearly identical fashion.

Prior to the date of the fall, TMX contracted with SouthCore to renovate the premises in preparation for a new business to occupy the space. To prepare for the renovation, SouthCore began to move furniture from the Equity Auto Loan side of the store. Employees had been told about the move before it happened, and the work occurred outside of business hours. The evening before Teston's fall, SouthCore removed most of the desks and office furniture from their usual locations on the Equity Auto Loan side of the premises. The items remaining after removal were the desk typically used by the store's manager, Rickie Jarvis (the "Jarvis desk"), and a credenza along the wall opposite the TitleMax side of the store. The desk had been pulled several feet away from the wall. The fax machine had been moved to the end

2

of the Jarvis desk. At the time of Teston's fall, the TitleMax side of the store had remained unchanged.

As a result of the removal of the desks and the rearrangement of the remaining furniture, electric cords that had been previously concealed by the desks were exposed. Notably, there were exposed cords that ran from the Jarvis desk to the outlet on the wall. A mat had been placed over a portion of the newly exposed cords, but there was a portion of the cords uncovered near the desk and near the wall. Jarvis testified that there was only a "very small gap" between the mat and his desk where the cords were exposed.[1] Although Teston knew that SouthCore had removed furniture from the Equity Auto Loan side of the store and employees had generally been warned to "be careful" during the renovation, neither SouthCore nor TMX warned her or anyone of the hazardous condition created by the exposed cords, specifically.

On the date of her injury, Teston was at work on the TitleMax side of the store when she needed access to an employee work schedule and the fax machine, both of which she believed to be located on the Jarvis desk. As she walked across to the

---

[1] A photograph showing a partial view of the cords and mat is a part of the record.

3

Equity Auto Loan side of the store to the Jarvis desk, Teston noticed a clear floor mat near the desk, but she did not notice any exposed cords. Teston testified that she did not see the cords "because [she] wasn't looking down." As Teston began to return to her desk, she walked by the left side of the Jarvis desk, tripped on the newly exposed electrical cords, and fractured her wrist. During her deposition, Teston drew a diagram of her path to the Jarvis desk and her attempted return path, which indicates that she took a similar path both to and from the Jarvis desk.

Jarvis testified that he did not provide SouthCore with any instruction in regards to removing the furniture and did not have any knowledge as to how SouthCore received instruction, if any, from TMX. Jarvis also testified that SouthCore was responsible for putting the mat out that partially covered the cords exposed by the desk removal.

SouthCore filed a motion for summary judgment, which the trial court granted. In its order, the trial court found that the circumstances in this case created an exception to the rule that a plaintiff-invitee typically has no obligation to continuously look down while walking because Teston's knowledge of the recent furniture rearrangement "imposed upon her a heightened obligation to look for open and obvious hazards where she was walking." Therefore, the trial court held that "it

4

is unreasonable for a person entering an office from which most furnishings have been removed to fail to look for hazards such as exposed cables." Teston then filed a motion in the trial court requesting that the order be reconsidered. In her motion, Teston argued that the trial court relied upon incorrect assumptions of fact. The trial court denied the motion for reconsideration in an order which accepted several facts set forth in the motion as true. The trial court reiterated its ruling that the removal of the office furniture from the Equity Auto Loan side of the store "triggered a heightened obligation to look for potential hazards created by the changes she was aware of." Teston appeals from those orders.

Teston argues, in two enumerations of error, that the trial court erred in concluding, as a matter of law, that she did not exercise ordinary care for her own safety in traversing the Equity Auto Loan side of the store and that she had a "heightened obligation to look for hazards."

The trial court is authorized to conclude, as a matter of law, that the facts do or do not show negligence on the part of the defendant or plaintiff only where the evidence is plain, palpable and undisputable. *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1) (493 SE2d 403) (1997). Further, "[i]t is the plaintiff's knowledge of the *specific hazard* precipitating a slip and fall which is determinative, not merely her

5

knowledge of the generally prevailing hazardous conditions or of hazardous conditions which plaintiff observes and avoids." (Citation and punctuation omitted; emphasis supplied.) *Nosiri v. Helm*, 301 Ga. App. 380, 381 (1) (687 SE2d 635) (2009).

Here, there is no question that Teston was aware that desks had been removed and that the Equity Auto Loan side of the store front had been rearranged. She had been informed of the renovation, it was obvious that furniture in the store had been removed and rearranged overnight, and there is testimony that employees had been warned to be careful in the store. However, there is no evidence that, at the time of her fall, Teston was aware of the existence of the cords protruding from the under the clear plastic floor mat to the Jarvis Desk. "Whether [Teston] exercised that duty of care commensurate with her knowledge . . . is a circumstance to be considered by the jury in determining if appellant exercised due care for her personal safety." (Citation and punctuation omitted.) Id.

Teston testified that although she traversed the clear floor mat covering the cables when she first approached the Jarvis desk, she did not see the cables because she was not looking down at the floor as she walked. In *Robinson,* supra, our Supreme Court rejected the argument that a plaintiff "fails to exercise ordinary care

6

for personal safety *as a matter of law* when [she] admits she failed to look at the location where she subsequently placed her foot." Id. at 743 (1) (emphasis supplied). This is because an invitee is "not required to maintain a constant lookout, but is entitled to assume that the owner/occupier has exercised reasonable care to make the premises safe." (Citation and punctuation omitted.) *J. H. Harvey Co. v. Reddick*, 240 Ga. App. 466, 472 (c) (522 SE2d 749) (1999) (plaintiff who slipped and fell in a grocery store did not fail to exercise ordinary care for her own safety, such that summary judgment was warranted to defendant grocery store, despite testimony that the plaintiff did not look down at the floor before she fell).

Therefore, "the issue is whether, taking into account all the circumstances existing at the time and place of the fall, the invitee exercised the prudence the ordinarily careful person would use in a like situation." *Robinson*, supra at 748 (2) (B). Although we note that this case may not be the strongest case for imposing liability upon SouthCore, as a jury might conclude that Teston should have seen the cords which caused her fall, we do not find that the circumstances in this case automatically require such a finding and warrant an award of summary judgment in Southcore's favor. Because we find that "reasonable minds can differ, taking into account all the circumstances at the time and place of the incident, the evidence does

not plainly, palpably, and indisputably lead to the conclusion that [Teston's] placement of her foot on a site she had not previously inspected visually is an act which is a want of such prudence as the ordinary careful person would use in a like situation." (Citations and punctuation omitted.) *Robinson*, supra at 743 (1). See *Nosiri,* supra (summary judgment in favor of defendant was not appropriate when plaintiff-employee had previously expressed concern about wires lying across the floor of her work area, she had previously moved phone cords that posed a danger to her, and on the day she fell, she was unaware where, or if, there was a cord present in the passageway and her view of the cords she tripped on was obstructed by other employees standing nearby).

*Judgment reversed. Barnes, P. J., and Mercier, J., concur*.

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 28, 2016**

# In the Court of Appeals of Georgia

A15A2324. TESTON et al. v. SOUTHCORE CONSTRUCTION, INC.

RAY, Judge.

Angela Teston and her husband sued Southcore Construction, Inc. seeking to recover from injuries she sustained when Teston tripped and fell over electric cords that were exposed during an office renovation. After discovery, the trial court granted Southcore's motion for summary judgment. Teston appeals from that order. For the following reasons, we reverse the trial court's grant of summary judgment.

We review the grant of a summary judgment motion de novo, viewing the evidence and all reasonable inferences and conclusions drawn from it in the light most favorable to the nonmovant. *Nosiri v. Helm*, 301 Ga. App. 380, 380 (687 SE2d 635) (2009).

The facts show the following: At the time of her fall, Teston was an employee of TitleMax of Georgia, Inc. The TitleMax store front housed two related businesses, TitleMax and Equity Auto Loan, a/k/a Instaloan, which are both subsidiaries of TMX Finance, LLC. The store was "divided pretty evenly straight down the center," with TitleMax employees' desks on the right side of the room and Equity Auto Loan employees' desks on the left side. The desks and furniture on the two sides of the room were arranged in nearly identical fashion.

Prior to the date of the fall, TMX contracted with SouthCore to renovate the premises in preparation for a new business to occupy the space. To prepare for the renovation, SouthCore began to move furniture from the Equity Auto Loan side of the store. Employees had been told about the move before it happened, and the work occurred outside of business hours. The evening before Teston's fall, SouthCore removed most of the desks and office furniture from their usual locations on the Equity Auto Loan side of the premises. The items remaining after removal were the desk typically used by the store's manager, Rickie Jarvis (the "Jarvis desk"), and a credenza along the wall opposite the TitleMax side of the store. The desk had been pulled several feet away from the wall. The fax machine had been moved to the end

of the Jarvis desk. At the time of Teston's fall, the TitleMax side of the store had remained unchanged.

As a result of the removal of the desks and the rearrangement of the remaining furniture, electric cords that had been previously concealed by the desks were exposed. Notably, there were exposed cords that ran from the Jarvis desk to the outlet on the wall. A mat had been placed over a portion of the newly exposed cords, but there was a portion of the cords uncovered near the desk and near the wall. Jarvis testified that there was only a "very small gap" between the mat and his desk where the cords were exposed.[1] Although Teston knew that SouthCore had removed furniture from the Equity Auto Loan side of the store and employees had generally been warned to "be careful" during the renovation, neither SouthCore nor TMX warned her or anyone of the hazardous condition created by the exposed cords, specifically.

On the date of her injury, Teston was at work on the TitleMax side of the store when she needed access to an employee work schedule and the fax machine, both of which she believed to be located on the Jarvis desk. As she walked across to the

---

[1] A photograph showing a partial view of the cords and mat is a part of the record.

Equity Auto Loan side of the store to the Jarvis desk, Teston noticed a clear floor mat near the desk, but she did not notice any exposed cords. Teston testified that she did not see the cords "because [she] wasn't looking down." As Teston began to return to her desk, she walked by the left side of the Jarvis desk, tripped on the newly exposed electrical cords, and fractured her wrist. During her deposition, Teston drew a diagram of her path to the Jarvis desk and her attempted return path, which indicates that she took a similar path both to and from the Jarvis desk.

Jarvis testified that he did not provide SouthCore with any instruction in regards to removing the furniture and did not have any knowledge as to how SouthCore received instruction, if any, from TMX. Jarvis also testified that SouthCore was responsible for putting the mat out that partially covered the cords exposed by the desk removal.

SouthCore filed a motion for summary judgment, which the trial court granted. In its order, the trial court found that the circumstances in this case created an exception to the rule that a plaintiff-invitee typically has no obligation to continuously look down while walking because Teston's knowledge of the recent furniture rearrangement "imposed upon her a heightened obligation to look for open and obvious hazards where she was walking." Therefore, the trial court held that "it

4

is unreasonable for a person entering an office from which most furnishings have been removed to fail to look for hazards such as exposed cables." Teston then filed a motion in the trial court requesting that the order be reconsidered. In her motion, Teston argued that the trial court relied upon incorrect assumptions of fact. The trial court denied the motion for reconsideration in an order which accepted several facts set forth in the motion as true. The trial court reiterated its ruling that the removal of the office furniture from the Equity Auto Loan side of the store "triggered a heightened obligation to look for potential hazards created by the changes she was aware of." Teston appeals from those orders.

Teston argues, in two enumerations of error, that the trial court erred in concluding, as a matter of law, that she did not exercise ordinary care for her own safety in traversing the Equity Auto Loan side of the store and that she had a "heightened obligation to look for hazards."

The trial court is authorized to conclude, as a matter of law, that the facts do or do not show negligence on the part of the defendant or plaintiff only where the evidence is plain, palpable and undisputable. *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1) (493 SE2d 403) (1997). Further, "[i]t is the plaintiff's knowledge of the *specific hazard* precipitating a slip and fall which is determinative, not merely her

5

knowledge of the generally prevailing hazardous conditions or of hazardous conditions which plaintiff observes and avoids." (Citation and punctuation omitted; emphasis supplied.) *Nosiri v. Helm*, 301 Ga. App. 380, 381 (1) (687 SE2d 635) (2009).

Here, there is no question that Teston was aware that desks had been removed and that the Equity Auto Loan side of the store front had been rearranged. She had been informed of the renovation, it was obvious that furniture in the store had been removed and rearranged overnight, and there is testimony that employees had been warned to be careful in the store. However, there is no evidence that, at the time of her fall, Teston was aware of the existence of the cords protruding from the under the clear plastic floor mat to the Jarvis Desk. "Whether [Teston] exercised that duty of care commensurate with her knowledge . . . is a circumstance to be considered by the jury in determining if appellant exercised due care for her personal safety." (Citation and punctuation omitted.) Id.

Teston testified that although she traversed the clear floor mat covering the cables when she first approached the Jarvis desk, she did not see the cables because she was not looking down at the floor as she walked. In *Robinson,* supra, our Supreme Court rejected the argument that a plaintiff "fails to exercise ordinary care

6

for personal safety *as a matter of law* when [she] admits she failed to look at the location where she subsequently placed her foot." Id. at 743 (1) (emphasis supplied). This is because an invitee is "not required to maintain a constant lookout, but is entitled to assume that the owner/occupier has exercised reasonable care to make the premises safe." (Citation and punctuation omitted.) *J. H. Harvey Co. v. Reddick*, 240 Ga. App. 466, 472 (c) (522 SE2d 749) (1999) (plaintiff who slipped and fell in a grocery store did not fail to exercise ordinary care for her own safety, such that summary judgment was warranted to defendant grocery store, despite testimony that the plaintiff did not look down at the floor before she fell).

Therefore, "the issue is whether, taking into account all the circumstances existing at the time and place of the fall, the invitee exercised the prudence the ordinarily careful person would use in a like situation." *Robinson*, supra at 748 (2) (B). Although we note that this case may not be the strongest case for imposing liability upon SouthCore, as a jury might conclude that Teston should have seen the cords which caused her fall, we do not find that the circumstances in this case automatically require such a finding and warrant an award of summary judgment in Southcore's favor. Because we find that "reasonable minds can differ, taking into account all the circumstances at the time and place of the incident, the evidence does

7

not plainly, palpably, and indisputably lead to the conclusion that [Teston's] placement of her foot on a site she had not previously inspected visually is an act which is a want of such prudence as the ordinary careful person would use in a like situation." (Citations and punctuation omitted.) *Robinson*, supra at 743 (1). See *Nosiri,* supra (summary judgment in favor of defendant was not appropriate when plaintiff-employee had previously expressed concern about wires lying across the floor of her work area, she had previously moved phone cords that posed a danger to her, and on the day she fell, she was unaware where, or if, there was a cord present in the passageway and her view of the cords she tripped on was obstructed by other employees standing nearby).

*Judgment reversed. Barnes, P. J., and Mercier, J., concur*.

ON MOTION FOR RECONSIDERATION

Upon motion for reconsideration, SouthCore argues that the trial court's grant of summary judgment in its favor should have been affirmed under the "right for any reason" doctrine. See *City of Gainesville v. Dodd*, 275 Ga. 834, 835 (1) (573 SE2d 369) (2002) ("Under the 'right for any reason' rule, an appellate court will affirm a judgment if it is correct for any reason, even if that reason is different from the reason upon which the trial court relied") (citation omitted). We remain unpersuaded.

1. SouthCore first asserts that we should have affirmed the trial court's grant of summary judgment under the "right for any reason" doctrine because it was not an "occupier" of the TitleMax building at the time of Teston's fall and thus, it owed no duty of care to her. However, even if we assume, without deciding, that SouthCore was not an owner or occupier of the TitleMax location, it "had the duty to use ordinary care" in its removal of the furniture as it prepared to renovate the storefront. (Citations omitted.) *Kelley v. Piggly Wiggly Southern, Inc.*, 230 Ga. App. 508, 509 (1) (496 SE2d 732) (1998). A jury issue exists as to whether SouthCore's act of covering the exposed electrical cords with floor mats, but leaving portions of the cords exposed, would constitute the use of ordinary care. See *Kelley*, supra at 509

9

("The 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication) (citation and punctuation omitted).

2. SouthCore next contends that summary judgment in its favor was appropriate under the "right for any reason rule" because Teston had previously traversed the area covered by the floor mats prior to her fall and, thus, that she had at least equal knowledge of the exposed electrical cords. We disagree.

Contrary to SouthCore's argument, Teston's deposition does not reveal that she had successfully traversed over the alleged defective condition – i. e., the exposed electrical cords, prior to her fall. Rather, Teston's deposition reveals that, prior to her fall, she crossed the cables where they were covered by the clear mat, which did not present a dangerous condition, although it would have indicated that the cables were present at that location if she had looked down. There is no evidence in the record as to whether Teston successfully negotiated prior to her fall the area not covered by the floor mats where the electrical cords were exposed. Accordingly, it cannot be decided as a matter of law that Teston had knowledge of the specific hazard which caused her

10

fall[2]. See *Landrum v. Enmark Stations, Inc.*, 310 Ga. App. 161, 164 (2) (712 SE2d 585) (2011) (summary judgment in favor of gas station not appropriate because there was no record evidence that plaintiff-customer had successfully negotiated an uneven crack in the pavement of the gas station parking lot prior to her fall. Although plaintiff had previously walked in that area of the parking lot, it was possible that plaintiff had taken a slightly different route upon return to her car when she tripped).

*Motion for reconsideration denied.*

---

[2] We acknowledge that at trial SouthCore will have an appealing argument that Teston should have seen the exposed electrical cords prior to her fall. We leave resolution of that issue to the jury.