**THIRD DIVISION
DOYLE, P. J.,
GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 21, 2023**

# In the Court of Appeals of Georgia

A23A0038. HOWARD v. CTW ENTERPRISES, INC. et al.

PHIPPS, Senior Appellate Judge.

Phillip S. Howard, a customer at CTW Enterprises, Inc., d/b/a Mill Creek Car Wash & Lube ("CTW"), brought this premises liability action against CTW and its manager, alleging that he suffered injuries after falling into a work pit. The trial court granted summary judgment to the defendants, ruling that the pit was a static condition of which Howard had equal knowledge and that he failed to exercise ordinary care for his own safety. Howard appeals, but we find no error and affirm.

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In reviewing the grant or denial of a motion for summary judgment, we apply a de novo standard of review, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*D'Elia v. Phillips Edison & Co.*, 354 Ga. App. 696, 697 (839 SE2d 721) (2020) (citation and punctuation omitted).

So viewed, the record shows that on the day he fell, Howard was 81 years old and had retired after working for many years in the used car industry. Howard had been visiting CTW "once every two weeks" for the previous 15 years, had brought "a number of cars" there to be serviced, and was "literally a friend with everybody that worked there." According to Howard, the facility had three service bays, each containing a "zip pit" to allow employees to work underneath customers' vehicles. The pits were four to five feet deep and were located roughly ten to twelve feet inside the front garage door of each bay. Although Howard usually sat in a chair outside the pit area while employees worked on his car, he had "walked in the bay" at least once before while having his car emissions checked. Howard testified that CTW's layout had remained "about the same" over the past 15 years and the pits had been there the entire time.

On the day of the incident, Howard brought his car to CTW to have the headlights balanced and fluids checked. He sat in his customary chair while an employee brought his car up to the bay. Howard described what happened next:

2

And then when [the employee] brought the car in, he said Phil, come up here by the front of the car, if you will, and get down low so you can see if these lights are lined up. I'm trying to adjust them, I can't tell. Well, at this time, I'm in front of the pit facing the front door, and the pit is behind me, so I can't see the pit. I'm relying on him, who was up front in the car looking at me down on my knees. I said, well, I can't really tell if they're lined up properly or not. He says you need to back up about two more feet. So I was following his instructions, assuming he could see the pit because I couldn't, [and] when I backed up under his instructions, I fell into the pit.

Describing his positioning, Howard testified that he "got down [i]n a crouch" in front of the headlights and moved "straight back" at the employee's request. He knew the pit was behind him, but did not realize how close it was and did not look before backing up.

After Howard landed in the pit, the employee expressed concern and told him not to move, but CTW's general manager Young Lee berated Howard for being in the pit, then "got in his car and left" without offering assistance. Other CTW employees helped Howard out of the pit and offered to call an ambulance, but Howard declined and drove himself to his doctor's office. He suffered multiple injuries as a result of the fall.

Howard sued CTW and Lee, alleging that his injuries resulted from their negligent failure to keep the premises safe. Howard filed a motion for partial summary judgment on the issue of liability,[1] and the defendants filed a cross-motion for summary judgment on all claims. Following a hearing, the trial court granted the defendants' motion, ruling that Howard had equal knowledge of the pit, which was an open and obvious static condition, and that he failed to exercise ordinary care for his own safety.[2] Howard appeals, challenging both rulings.

The basic law of premises liability is well established:

[A] plaintiff must show (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier. Accordingly, the fundamental basis for an owner or occupier's liability is that party's superior knowledge of the hazard encountered by the plaintiff. In other

---

[1] Howard also filed a "Motion for Spoliation and Punitive Damages Jury Instruction," alleging that the defendants had knowingly deleted a video recording of the incident. The defendants responded that CTW's video camera system automatically overwrites itself every 27.5 days, so "any video footage of the incident would have been automatically overwritten before any duty to preserve could have attached." The record contains no ruling on this motion.

[2] Although the trial court did not specifically address Howard's motion for partial summary judgment, it characterized its order as a "final judgment on the merits resolving all claims against the Defendants."

4

words, a plaintiff is not entitled to recovery if the undisputed evidence demonstrates that the plaintiff's knowledge of the hazard was equal to or greater than that of the defendant.

*Crebs v. Bass Pro Outdoor World*, 360 Ga. App. 121, 122-123 (860 SE2d 802) (2021) (citation and punctuation omitted). As the trial court observed, this case involves a static condition, which is "one that does not change and is dangerous only if someone fails to see it and walks into it." *D'Elia*, 354 Ga. App. at 698 (citation and punctuation omitted). "[I]f nothing obstructs the [plaintiff's] ability to see the static condition, the proprietor may safely assume that the [plaintiff] will see it and will realize any associated risks." Id. at 699 (citation and punctuation omitted).

Here, Howard had visited CTW every other week for 15 years, or about 390 times. He was familiar with the layout of the premises, which had not fundamentally changed during those 15 years. He was aware of the pits and could describe them in detail from memory. On the day of the incident, when Howard crouched down to look at his car's headlights, he knew the pit was behind him; and when he backed up, he knew he was moving toward the pit. There is no evidence that anything blocked or

5

obstructed his view of the pit.[3] Thus, the undisputed evidence shows that Howard's knowledge of the pit was equal to that of the defendants. See *Crebs*, 360 Ga. App. at 123. See also *Morrison v. Anderson*, 221 Ga. App. 396, 397 (1) (471 SE2d 329) (1996) (affirming grant of summary judgment to proprietor where invitee fell off a loading dock at a restaurant he had visited "three or four times a week for ten years," the edge of the loading dock "was in plain view," and the invitee had equal knowledge of any hazard).

Howard argues that his awareness of the pit does not insulate the defendants from liability. He cites *Brown-Legette v. QuikTrip*, No. 1:20-CV-03300-JPB, 2022 WL 279958 (N.D. Ga. Jan. 31, 2022), in which the federal district court held that a gas station customer who had successfully walked near a hazard twice before slipping on it did not have equal knowledge of it because "it is undisputed that [she] did not notice the hazard when making her first two trips[.]" Id. at *3 (B) (1). Here, by contrast, Howard indisputably was aware of the pit. He also relies on *Nosiri v. Helm*, 301 Ga. App. 380 (687 SE2d 635) (2009), in which we held that a plaintiff who was "aware of the existence of [a] cell phone cord" before she tripped over it was not

---

[3] On appeal, Howard asserts that the car's headlights "blinded" him, but he cites no evidence in the record to support this claim, and we have found none.

necessarily barred from recovery because "there is no evidence that she was aware of its exact position at the time it tripped her." Id. at 381 (1). But unlike *Nosiri*, this case involves a static condition. The pit was always in the same place, and Howard knew it. Thus, *Brown-Legette* and *Nosiri* are distinguishable on their facts and do not help Howard.

Next, Howard contends that the CTW employee assumed responsibility for Howard's safety by asking him to enter the bay and kneel in front of the pit to help adjust the headlights. We rejected a similar argument, however, in *Roberts v. Carter*, 214 Ga. App. 540 (448 SE2d 239) (1994). There, the proprietor invited the plaintiff into his used car business to repair a truck that was "being held off the ground by a hoist and chain." Id. at 540. The plaintiff knew the chain, alone, likely would not hold the truck, so the proprietor offered to retrieve safety supports. Id. First, however, the proprietor "told [the plaintiff] to crawl under the truck to see what kind of tools he would need for the repair job and told him that the chain should hold the truck while he did so." Id. The plaintiff crawled under the truck, the chain broke, and the plaintiff was injured. Id. He sued the proprietor, who unsuccessfully sought summary judgment. We reversed, holding that the proprietor's provision of an inadequate chain and his instruction to the plaintiff to go under the unsupported truck did not render

7

him liable because the plaintiff was aware of the risk and "[his] course of action was voluntary and not restrained by any coercive circumstances or emergency." Id. at 541.

Here, as in *Roberts*, Howard appreciated the potential danger posed by the pit, yet he chose to crouch in front of it to help the CTW employee, and he chose to move backward without looking. Although Howard insists in his appellate brief that the employee "coercively instructed" him, there is no evidence that Howard was pressured, bullied, or otherwise forced into providing assistance or backing up for a better view of the headlights. To the contrary, Howard testified that the employee told him to "come up here by the front of the car, *if you will*," indicating that Howard's participation was strictly voluntary. (Emphasis supplied.) Further, his testimony that he was "literally a friend with everybody that worked there" undermines his claim of coercion.

Howard also argues that the employee had a better view of the pit than he did and should have warned him. However, the employee was not deposed, and the record does not show exactly where he was situated in relation to Howard and the pit. Howard said that the employee was "in the car looking at [him]," but it is not clear that the employee's vantage point — whatever it was — would have allowed him to identify the contours of the pit at ground level immediately in front of the car. In fact,

8

Howard testified that he was "*assuming* [the employee] could see the pit because [he, Howard,] couldn't[.]" (Emphasis supplied.) But mere speculation that the employee was better equipped to determine Howard's proximity to the pit cannot create an issue of fact to defeat summary judgment. See *Pirkle v. QuikTrip*, 325 Ga. App. 597, 600 (2) (a) (754 SE2d 387) (2014) ("An inference based on mere possibility, conjecture, or speculation is not a reasonable inference sufficient to establish a genuine issue of fact and preclude summary judgment.") (citation and punctuation omitted). In any event, "if the invitee knows of the condition or hazard there is no duty on the part of the proprietor to warn him and there is no liability for resulting injury[.]" *Morrison*, 221 Ga. App. at 397 (1) (citation and punctuation omitted).

Finally, Howard claims that he was unable to look out for his own safety because he was an 81-year-old man in a "vulnerable, non-ambulatory crouching position." It is well-established that a plaintiff has a duty to exercise ordinary care for his own safety. *Bartlett v. McDonough Bedding*, 313 Ga. App. 657, 660 (722 SE2d 380) (2012). When the plaintiff cannot see where he is going, "he [is] aware of that *lack of visibility* and should . . . exercise[] greater caution for his own safety" and "conduct himself accordingly." Id. (citation and punctuation omitted; emphasis in original). The undisputed evidence shows that Howard elected to move backward in

9

the direction of a known hazard without looking first. Although he suggests on appeal that he "could not turn his head," he cites no evidence of any physical condition that would have prevented normal movement of his neck and torso.[4] Under these circumstances, the trial court did not err by granting summary judgment to the defendants.

*Judgment affirmed. Doyle., P. J., and Gobeil, J., concur.*

---

[4] Howard states that "[i]f he would have been walking or standing, he could have turned his head to see where he was walking." Even assuming Howard's crouching position inhibited rotational movement, it does not appear that anything prevented him from temporarily shifting that position to look backward before moving closer to a known hazard. Alternatively, Howard could have asked the employee to get out of the car and check his proximity to the pit.