## A03A1643. SANGSTER v. DUJINSKI.
(590 SE2d 202)

SMITH, Chief Judge.

In this personal injury action brought by Karen E. Dujinski, defendant Ricky R. Sangster, Jr. appeals from denial of his motion for new trial, renewed motion for mistrial, and motion for attorney

---

[31] (Footnotes omitted; emphasis in original.) Id., citing *Holmes,* supra at 126 (2).

fees based upon improper argument of counsel and violation of the trial court's order in limine. Because the record shows a pattern of persistent violation of both OCGA § 9-10-185 and the trial court's order limiting the evidence admissible at trial, we reverse.

This action arose from a traffic altercation during which Sangster struck Dujinski with his fist. After a two-phase trial, the jury returned a verdict of $682.56 in actual damages and $150,000 in punitive damages.

Before trial, Sangster filed a motion in limine seeking to bar evidence of "any prior incident involving the defendant's conduct on other occasions under different circumstances," including traffic citations, criminal charges, or prior use of marijuana or alcohol, as well as references to "road rage," aggressive driving, aggravated assault, or aggravated battery. During the motions hearing at the start of the trial, the trial court granted the motion, stating, "The court wishes to try this case based, as far as the first phase is concerned, based upon what happened that night. Therefore, I am going to grant the motion in limine."

But Dujinski's trial counsel, Eric James Hertz,[1] violated the court's order almost immediately and continued to do so throughout the trial. During the first phase of the trial and beginning with his opening statement, Hertz repeatedly referred to matters forbidden by the court's order in limine. In opening statement, Hertz argued that Sangster's wife was suffering from "battered wife syndrome," referred to drunk driving, problems in the military, and criminal matters and stated that "the jury would be hearing other conduct, all the other times he might have done something to someone." The trial court denied the ensuing motion for mistrial but declined the request to reconsider its ruling on Sangster's motion in limine: "Well, at this time I am not going to reconsider my ruling. I am going to continue [to] insist that we try this case based on what happened that night." The trial court did not give any curative instructions to the jury or rebuke counsel before the jury.

Hertz continued to raise matters forbidden by the motion in limine in the first phase of the trial, despite the trial court's repeated cautions and instructions to counsel that "I am going to ask you not to do it." On cross-examination, he asked Sangster if he was the "same Ricky Roger Sangster arrested for drinking alcohol and hitting a police officer?" He asked Sangster about scrapes on his wife's arms and asked his wife whether she had fought with her husband. Although Dujinski testified that she did not know if Sangster had

---

[1] As Sangster notes in his brief, Dujinski's other attorneys of record took no apparent part in this misconduct.

been drinking or not, Hertz repeatedly suggested that Sangster was drunk and suggested without evidence that he had received "free drinks all along the way" during a flight from Mexico on the date of the altercation.

In closing argument during the first phase, Hertz repeatedly referred to "[h]ow many times has he gotten away with stuff that he's done in the past that we don't know about." He also again suggested that Sangster's wife "maybe . . . has battered women's syndrome" and stated that the trial court had permitted his discussion of battered wife syndrome in his opening statement: "Just the only thing I am allowed to talk about is just the potential for maybe beating his wife."[2]

Despite severance of the punitive damages phase, Hertz repeatedly referred to other bad acts in his first closing argument by stating that "punitive damages by nature are about every bad thing this guy has done. The judge can rule, and the judge has ruled it's not allowed in this first phase of the trial because he wants you to give a fair amount here." He discussed in detail the second phase of the trial, saying, "if there's police reports, if there's previous acts and subsequent acts, they are all going to come up one after another: pow, pow, pow, pow. I am going to write them all on the chart: boom, boom, boom, boom, boom." At one point, Hertz told the jury that he had pointed his finger in Sangster's face and the sheriff had warned him, "You better not do that. He might jump up and beat you up. I never thought of that. Hell, yeah, I am afraid." He told the jury, "I was afraid to go to sleep last night. . . . I am afraid this guy is going to show up at my house." Hertz also suggested that he was telling the truth and Sangster's counsel was not, asking the jury to decide "whether he's trying to create facts to make you think things are not there or whether he's telling the truth. I am going to tell you how I told the truth."

In addition, Hertz repeatedly referred to his own veracity in vouching for the truth of his client's cause, stating, "When I give an oath I put God under there." "You can hold me to it. You can hold my bar license. You can take it back with you. You can hold it. I won't be a lawyer anymore."[3] He stated, "I wrote the book on punitive damages" and referred to his appearances on Court TV and his charitable

---

[2] These excerpts from the transcript and those following are by no means an exhaustive catalog, but merely examples of Hertz's improprieties and violations of the order in limine throughout the trial.

[3] " 'In appearing in a professional capacity before a tribunal, a lawyer shall not assert a personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused.' Directory Rule 7-106 (C) (4), Rules and Regulations of the State Bar of Georgia." (Punctuation omitted.) *Metts v. State*, 270 Ga. 481, 484 (4) (511 SE2d 508) (1999).

work in Jamaica. Noting that "[t]he problem with this country is it's too litigious," he touted himself as

> not the ordinary plaintiff attorney. . . . I'm the plaintiff attorney that takes cases that need to be taken to court whether I get paid or not, and punish people that need to be punished to make a difference in this world. I should be a district attorney. If you noticed, a couple of my district attorney friends came in to say hi to me during the trial, because that's what I do. I do the same thing the district attorney does.

Sangster repeatedly moved for a mistrial and eventually asked for and was granted a continuing objection. At one point, the trial court commented, "I'm close to mistrying this case. If I see one more thing that I think is improper, I may do just that." But even in the punitive damages phase of the trial, Hertz continued to argue prejudicial matters not raised by the evidence. He repeatedly stated that Sangster could simply file for bankruptcy and avoid paying any amount awarded, stating, "That's not something he's ever going to pay anyways" and "there is no likelihood of collecting money."[4] Once again, he reiterated his veracity and vouched for his client's cause, stating, "My bar license is on the line."

> Under OCGA § 9-10-185, where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds. In its discretion the court may order a mistrial for improper remarks of counsel. Some improper statements, however, may be so prejudicial that no instruction from the trial court can eradicate their effect from the jurors' minds. In ruling on matters contemplated by the above-quoted code section, the trial court is vested with a broad discretion, and its ruling will not be disturbed unless this discretion was manifestly abused.

(Citations and punctuation omitted.) *Urban Med. Hosp. v. Seay*, 179 Ga. App. 874, 876 (348 SE2d 315) (1986). See also *McEachern v.*

---

[4] This line of argument clearly resonated with the jury; the first note sent to the trial court during deliberations inquired, "Is punitive damages monetary only or is there another way of punishing the person?"

*McEachern*, 260 Ga. 320, 322 (2) (394 SE2d 92) (1990). In reviewing the trial court's refusal to grant a mistrial, we consider whether the remarks affected or infected the verdict, *Stoner v. Eden*, 199 Ga. App. 135, 138 (2) (404 SE2d 283) (1991), and whether "it is apparent that a mistrial is essential to the preservation of the right to a fair trial." (Citations omitted.) *Salmon v. Salmon*, 223 Ga. 129 (1) (153 SE2d 719) (1967). With the exception, however, of one instance in which it offered and Sangster's counsel declined a curative instruction, the trial court "neither rebuked counsel in the presence of the jury nor endeavored to remove the improper impression left by the reference . . . from the minds of the jurors. The absence of either corrective action flies in the face of the mandatory language of OCGA § 9-10-185, and is error." *All Risk Ins. Agency v. Southern Bell Tel. &c. Co.*, 182 Ga. App. 190, 193 (4) (355 SE2d 465) (1987).

The contention that Sangster "opened the door" to argument on various matters forbidden by the order in limine, even if true, did not justify the repeated use of this kind of argument in opening statement, before any evidence had been presented, or after repeated cautions by the trial court not to introduce such evidence or argument. The contention that Hertz's references were not harmful because they were merely "conjecture" and because he stated during his argument that what counsel says during trial is not evidence but merely "spin" is without merit. This does not cure the harm; it simply ignores that Hertz's statements were not only in violation of the order in limine, but also in violation of the principle that counsel's argument may not comment on matters not in evidence. OCGA § 9-10-185. The assertion that Hertz's use of the word "if" rendered his argument harmless is equally without merit.

Here, Hertz's persistent pattern of arguing facts not in evidence before the jury constituted a clear violation of OCGA § 9-10-185. This conduct, as well as his continuing violation of the trial court's order in limine, paired with the trial court's failure to give appropriate correction under OCGA § 9-10-185, inevitably contaminated the jury's deliberations and deprived Sangster of his right to a fair trial.

Under the extreme circumstances of this case, we are constrained to "conclude that no amount of instruction by the trial court to disregard . . . counsel's argument could have erased the effect of . . . counsel's remarks under the particular facts and circumstances of the case sub judice. Nothing short of the grant of [a] motion for a mistrial would have been sufficient to cure the harm inflicted." (Citations omitted.) *Adams v. Camp Harmony Assn.*, 190 Ga. App. 506, 508-509 (1) (379 SE2d 407) (1989).

The arguments of counsel and the injection of irrelevant material were so abominably inflammatory and prejudicial

that it is impossible to say the verdict was unaffected thereby. . . . The language and irrelevant evidence used was so calculated to prejudice the jury . . . that it is extremely doubtful if its injurious effects could have been cured by any rebuke of the court or by any instructions to the jury. A mistrial was the only remedy.

(Citation and punctuation omitted.) *Central of Ga. R. Co. v. Howard,* 161 Ga. App. 560, 565 (2) (288 SE2d 347) (1982).

We note that ample evidence was presented at trial from which the jury could have concluded that Sangster's conduct in the underlying incident was reprehensible in the extreme and fully justified the award of punitive damages. But the jury must make that determination within the framework of relevant and admissible evidence, not in the context of persistent attempts on the part of counsel to inject into its deliberations irrelevant and prejudicial matters, including those forbidden by an order in limine. We must conclude that the trial court abused its discretion in denying Sangster's motion for new trial. We also remand Sangster's OCGA § 9-15-14 motion for attorney fees for reconsideration in light of this opinion.

*Judgment reversed and case remanded. Ruffin, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 18, 2003.

*Gray, Hedrick & Edenfield, Lloyd B. Hedrick, Jr.,* for appellant.
*Benton, Preston & Malcom, Robert M. Malcom, Hertz, Link & Smith, Eric J. Hertz, Houston D. Smith III,* for appellee.