A11A1083. GEORGIA DEPARTMENT OF CORRECTIONS
v. COUCH.
(718 SE2d 875)

DOYLE, Judge.

David Lee Couch filed this premises liability action against the Georgia Department of Corrections ("the Department") seeking damages for physical injuries he sustained while working in a prison detail at Walker State Prison. The Department appeals the judgment entered on the jury's verdict in favor of Couch. For the reasons that follow, we affirm.

In an appeal from a jury verdict, this Court must affirm the judgment "if there is any evidence to support it, and the evidence is to be construed in a light most favorable to the prevailing party with every presumption and inference in favor of sustaining the verdict."[1]

---

[1] (Punctuation omitted.) *Freese II v. Moses*, 301 Ga. App. 793, 794 (689 SE2d 98) (2009).

So viewed, the record shows that on July 9, 2004, while housed as an inmate at Walker State Prison, Couch volunteered to paint the warden's house, which was located across from the prison. The house was under renovation, and another crew had removed the flooring in the kitchen and dining area of the home, leaving the floor joists exposed, because the floor and some of the joists were water-damaged and rotted. By the time of the incident, the Department was in the process of replacing the floor joists, but although some of the floor joists in the dining area had been replaced, the crew had left some of the joists that were dry-rotted.

When Couch arrived at the house, he and the other members of the painting crew traversed the kitchen and dining area by walking along the floor joists in order to retrieve painting supplies stored in the garage and to access the second floor of the home where they were painting. Couch and the other crew members were not warned about the dry rot and were not told to stay out of the kitchen and dining area. Couch testified that walking across floor joists is a common practice in residential construction and generally is not considered dangerous.

After a few times of walking through the area over the course of the day, Couch was proceeding back to the second floor when one of the joists in the dining area deteriorated and gave way beneath his foot, causing him to fall and land with his legs straddling a joist. As a result of the fall, Couch suffered a severed urethra.

The jury returned a verdict in favor of Couch in the amount of $105,417. The verdict form did not require the jury to specifically address whether Couch was an invitee or licensee. The trial court entered judgment on that verdict. The Department appeals, asserting that the trial court erred by (1) denying its motion for a directed verdict; (2) overruling objections regarding the admission of certain evidence; (3) denying its motion for mistrial; and (4) refusing to give a jury charge on the issue of voluntary departure.

1. First, the Department argues that the trial court erred by denying its motion for a directed verdict.

"A directed verdict is appropriate only if there is no conflict in the evidence as to any material issue and the evidence introduced, construed most favorably to the party opposing the motion, demands a particular verdict."[2]

(a) Specifically, the Department contends that Couch should have been classified as a licensee to whom the Department only owed a duty to refrain from wilfully or wantonly injuring Couch.

---

[2] (Punctuation omitted.) *Ramcke v. Ga. Power Co.*, 306 Ga. App. 736 (703 SE2d 13) (2010).

[Couch]'s status as either a licensee or an invitee determines the duty of care that [the Department owed him]. An invitee is someone whom a landowner, by express or implied invitation, induces or leads to come upon his premises for any lawful purpose. A licensee, on the other hand, is a person who is neither a customer, a servant, nor a trespasser, who does not stand in any contractual relation with the landowner, and who is permitted to go on the premises merely for her own interests, convenience, or gratification. The generally accepted test to determine whether one is an invitee or a licensee is whether the party coming onto the business premises had present business relations with the owner or occupier which would render [his] presence of mutual benefit to both, or was for business with one other than the owner or occupier.[3]

The Department contends that as a matter of law Couch should have been deemed to be a licensee, either because of his status as a prisoner or because he left the area of the home in which he was invited to be and entered an area of the home where he was not invited and then became injured. Nevertheless, we need not address this question.

When there is conflicting evidence as to the legal status of the injured party, the question is rightfully left to the jury.[4] Here, the trial court properly denied the Department's motion for directed verdict as to the issue of duty because there was conflicting evidence as to whether Couch was in the warden's home as a benefit to the Department and whether Couch was warned to stay out of the kitchen and dining area. The trial court correctly charged the jury on the law of duties of care owed to licensees and invitees, and evidence presented at trial supported a finding that Couch was an invitee at the time he was injured.[5] Accordingly, the Department's argument is without merit.

(b) The Department also contends that Couch had equal knowledge of the dry rot that caused his fall because he had traversed the floor joists several times before he fell and that Couch failed to exercise due care for his own safety as a matter of law. We disagree.

---

[3] (Punctuation and footnotes omitted.) *Howard v. Gram Corp.*, 268 Ga. App. 466, 467 (602 SE2d 241) (2004).

[4] See *Shaw v. McDonald's Restaurants of Ga.*, 191 Ga. App. 583, 584 (1) (382 SE2d 632) (1989).

[5] Cf. *Freese II*, 301 Ga. App. at 795 ("In the absence of a verdict form requiring the jury to specify on what theory it found the defendants liable, the method by which a jury reaches a particular verdict is not a matter of which this Court can take judicial cognizance.") (punctuation omitted).

The trial court can conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff only where the evidence is plain, palpable and undisputable. It is the plaintiff's knowledge of the specific hazard precipitating a slip and fall which is determinative, not merely [his] knowledge of the generally prevailing hazardous conditions or of hazardous conditions which plaintiff observes and avoids.[6]

In this case, the trial court correctly allowed the case to go to a jury because although there was no question that Couch was aware of the phenomenon of dry rot in general and was aware that one could fall from a floor joist, there was no evidence that he was aware of any dry rot in these particular floor joists. Therefore, a question of fact existed as to whether Couch was aware or should have been aware of the hazard after walking over the area prior to his fall.[7] Moreover, the trial court also correctly determined that a jury question existed as to the issue of "[w]hether [Couch] exercised that duty of care commensurate with [his] knowledge [and] . . . exercised due care for [his] personal safety."[8] "As noted in *Robinson v. Kroger Co.*,[9] what constitutes a reasonable lookout depends on all the circumstances at the time and place. It [was] for the jury to determine whether . . . [Couch] should . . . have been more vigilant for [his] own safety."[10]

(c) The Department contends that the trial court erred by denying its motion for a directed verdict because Couch assumed the risk of injury by traversing the floor joists. Again, we disagree.

"[E]xcept in plain, palpable[,] and undisputed cases where reasonable minds cannot differ as to the conclusions to be reached, questions of contributory negligence and assumption of risk are for the jury."[11]

Absolutely fundamental to any assumption of the risk analysis is knowledge of the risk involved, which must be both actual and subjective — the knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity

---

[6] (Citations and punctuation omitted.) *Nosiri v. Helm*, 301 Ga. App. 380, 381 (1) (687 SE2d 635) (2009).

[7] See id.

[8] (Punctuation omitted.) Id.

[9] 268 Ga. 735, 739 (493 SE2d 403) (1997).

[10] (Citations and punctuation omitted.) *Nosiri*, 301 Ga. App. at 382 (1).

[11] Id. at 382 (2).

or condition that proximately causes injury. Significantly, a plaintiff's comprehension or general understanding of non-specific risks that might be associated with the activity at issue is not sufficient. Rather, in its simplest and primary sense, assumption of the risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone.[12]

The undisputed testimony of the record established that Couch had previously worked in the construction industry and was of the opinion that walking along exposed floor joists was a reasonable, common practice, and that he expected any rotten areas to be cordoned off or warned about; although he was aware that wood could rot, he was not aware of a specific risk that the wood over which he walked was rotten so as to expose him to the risk of having a portion of the joist deteriorate under his foot as he traversed the area.[13] Thus, at the very least, there was a question of fact as to whether Couch assumed the risk of the fall by traversing the floor joists rather than walking around the outside of the home, and the trial court did not err by refusing to grant a directed verdict based on this argument.

2. Next, the Department contends that the trial court abused its discretion by denying its motion for mistrial after the admission of the opinion of Dr. Joseph Paris regarding the liability of the Department for the cost of Couch's treatment. We disagree.

When ruling on a motion for mistrial, a trial court is vested with broad discretion, and this Court will not disturb the ruling absent a manifest abuse of discretion.[14] "In reviewing the trial court's refusal to grant a mistrial, we consider whether the remarks affected or infected the verdict, and whether it is apparent that a mistrial is essential to the preservation of the right to a fair trial."[15]

Couch presented the testimony of Dr. Norman Fitz-Henley via deposition at trial. Prior to trial, the parties' attorneys conferred regarding the deposition, and the two had agreed to redact certain portions. Couch's attorney inadvertently failed to actually redact the

---

[12] (Citations and punctuation omitted.) *Baker v. Harcon, Inc.*, 303 Ga. App. 749, 754 (b) (694 SE2d 673) (2010).

[13] See, e.g., *The Augusta Country Club v. Blake*, 280 Ga. App. 650, 656 (1) (c) (634 SE2d 812) (2006) (affirming denial of directed verdict against defendant related to negligence for failure to remove magnolia seed pods and leaves from the grounds, leading to plaintiff's fall).

[14] See *Sangster v. Dujinski*, 264 Ga. App. 213, 216 (590 SE2d 202) (2003).

[15] (Citation and punctuation omitted.) Id. at 217.

agreed-upon portions of the deposition transcript that was read into evidence. As a result, during Fitz-Henley's testimony regarding evidence of a refusal-of-treatment form Couch had signed prior to leaving prison, Couch's attorney questioned him about an e-mail discussion between Paris and another individual about Couch. Couch's attorney followed up a question about the refusal of treatment issue by reading an additional portion of Paris's e-mail, which stated that, "[Couch's] injury occurred as a result of working for us. If we do not finish his surgical sequence before he is released, we will have to foot the bill for him as a free person anyway in my opinion."

After the statement above was read to the jury from Fitz-Henley's deposition, the Department objected, and the jury was removed from the courtroom. The attorneys discussed the situation with the court, and the Department moved for a mistrial based on the testimony. The trial court overruled the motion, but issued a curative instruction to the jury directing them to disregard the testimony, and the remainder of Fitz-Henley's deposition (approximately 60 pages of testimony) was then read to the jury.

Here, although the evidence was prejudicial, the nature and context of the statement — mere reference to an e-mail discussion, which included the phrase "in my opinion," from a nontestifying physician presented as an exhibit to another physician's deposition that was subsequently read to the jury — was insufficient to fatally infect the verdict and demand a mistrial.[16]

3. The Department contends that the trial court erred by overruling certain objections to testimony presented at trial. We disagree.

"A trial court's rulings with respect to evidence relevancy will not be reversed absent abuse of discretion. Moreover, if the evidence offered by a party is of doubtful relevancy, it should nevertheless be admitted and its weight left to the jury."[17] If "irrelevant evidence is admitted over timely objection, it affords no cause for a new trial, unless the nature of the evidence is such as reasonably to prejudice the rights of the objecting party."[18]

(a) First, the Department contends that the trial court erred by overruling its objection to Couch's testimony regarding whether the Department promised to pay for his future medical care. We disagree.

---

[16] See *Travelers Indem. Co. v. Wilkes County*, 102 Ga. App. 362, 366 (2) (116 SE2d 314) (1966) (cautionary instruction and implied rebuke were sufficient to cure the harm, and thus, denial of the motion for mistrial was not an abuse of discretion). Compare *Sangster*, 264 Ga. App. at 217 (trial court neither rebuked counsel nor issued a curative instruction).

[17] (Punctuation omitted.) *Kilday v. Kennestone Physicians Center*, 296 Ga. App. 818, 819-820 (1) (676 SE2d 271) (2009).

[18] (Punctuation omitted.) Id. at 820 (1).

The citations to the record provided by the Department span a number of pages that include several objections to Couch's testimony and the tender of documentary evidence to which the Department objected. Couch's testimony addressed whether he asked to receive treatment while he was in prison, and whether he ever refused offered treatment while he was in prison. Couch did not testify that anyone at the Department promised to pay for his treatment, but that a nurse named Mike Patterson explained to Couch that he could schedule surgery after his release. The trial court sustained the Department's objection to this testimony. The trial court did allow into evidence a document entitled "Georgia Department of Corrections Refusal of Treatment Against Medical Advice," which stated that rather than receive treatment at the Medical College of Georgia, an appointment for further treatment would be scheduled for Couch at another location subsequent to his release; the document did not include any specific language binding the Department to pay for any treatment. Because the issue of whether Couch refused offered medical service while he was in prison was relevant to the issues of the amount of damages and the extent of any problems related to delayed treatment, the trial court did not abuse its discretion by allowing the evidence at trial.[19]

(b) Next, the Department contends that the trial court erred by overruling its objections to Couch's testimony that he wanted treatment while in prison because he had no money and no insurance, and the court's error was compounded when Couch's counsel argued at closing that the Department intentionally delayed scheduling his treatment. As previously stated, this testimony was relevant to establish that Couch did not refuse treatment while in prison. Thus, we discern no abuse of discretion on the part of the trial court by overruling the Department's objection to the testimony.

To the extent that Couch's attorney's closing argument included argument of these facts, they were supported by the evidence at trial and were made as part of the attorney's larger argument that Couch did not refuse treatment while he was incarcerated, contrary to the refusal-of-treatment form.[20]

(c) The Department also contends that the trial court erred by

---

[19] See id. at 820 (1) (a).

[20] See *Davenport v. Yawn*, 297 Ga. App. 685, 687 (1) (678 SE2d 148) (2009) ("Whether to permit certain arguments by counsel during opening and closing statements is left to the trial court's discretion and unless some positive injury can be shown by the remarks of counsel, the discretion of the trial judge will not be controlled. While counsel should not go outside the facts appearing in the case and the inferences to be deduced therefrom, he may upon the facts in the record, and upon the deductions he may choose to draw therefrom, make almost any form of argument he desires.") (citation and punctuation omitted).

overruling its objections to the admission of improper character evidence with regard to Officer Jeffrey Woolridge, who was supervising Couch and the other inmates on the painting detail on the day in question. As an initial matter, we note that the trial court sustained the Department's objection to the admission of evidence of a domestic incident in which Woolridge may have been involved. With regard to impeachment of Woolridge regarding whether he had received previous reprimands at work, we discern no abuse of discretion. Woolridge contended at trial that he instructed the inmates, including Couch, to stay out of the kitchen, and thus, his diligence about observing and supervising inmates was relevant to the issues of the Department's duty to Couch while he was in the area at the time of his fall, and Couch's knowledge of the danger of the area in question.[21] Accordingly, we discern no abuse of discretion on the part of the trial court by overruling the Department's objections to Couch's attempts to impeach Woolridge's credibility.

4. Finally, the Department argues that the trial court erred by refusing to give a jury charge on the issue of voluntary departure. We disagree.

At issue, is the following requested charge:

It is incumbent upon the plaintiff to use the degree of care necessary under the circumstances to avoid injury to himself. The reasonable selection of a route of travel is part of a person's duty to exercise ordinary care for his own safety. Where a person voluntarily departs from the route designated and maintained by the owner for the person's safety and convenience, the degree of caution owed by the person to exercise ordinary care for his own safety is heightened by any increased risk that results from his choice of path.

"In order for a trial court's refusal to give a party's written requested charge to be error, the request must be adjusted to the pleadings, law, and evidence, and not otherwise covered in the general charge. . . . In reviewing an allegedly erroneous jury instruction, we apply the plain legal error standard of review."[22] Moreover, "[i]t is axiomatic that a jury charge need not be given in the exact

---

[21] See *Smith v. State*, 190 Ga. App. 6, 7-8 (2) (378 SE2d 349) (1989) ("Generally, a party may show anything which in the slightest degree affects the credit of an opposing witness. A witness may be impeached on a collateral issue [that] is indirectly material to the issue in the case. Evidence tendered for impeachment purposes need not be of the kind or quality required for proving the facts.") (citations and punctuation omitted).

[22] (Punctuation omitted.) *Thompson v. Princell*, 304 Ga. App. 256 (696 SE2d 91) (2010).

language requested if the charge as given clearly covers the circumstances of the case."[23]

Here, the Department has failed to establish harm as a result of the trial court's refusal to instruct the jury on the charge as stated above.

> Even though a request to charge may be apt, correct and pertinent, it is not necessarily error to fail to charge it. We must look to the charge as a whole to determine whether the court substantially covered the principles embodied therein or whether it was sufficiently or substantially covered by the general charge.[24]

Viewed in this light, the trial court correctly instructed the jury on the issues embodied in the Department's requested charge through the court's charges regarding the definition of negligence and ordinary care, duties to invitees and licensees, implied invitation, scope of invitation, static defects, avoidance of the consequences, contributory negligence, and assumption of the risk. Accordingly, this enumeration is without merit.

5. Couch's motions to strike portions of the Department's reply brief are denied as moot.

*Judgment affirmed. Miller, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 15, 2011.

*Samuel S. Olens, Attorney General, Robert L. Bunner, Assistant Attorney General*, for appellant.

*Farah & Farah, Kevin Elwell, Thomas G. Tidwell*, for appellee.

---

[23] (Citation and punctuation omitted.) Id. at 261 (b).

[24] See *Ga. Dept. of Transp. v. Miller*, 300 Ga. App. 857, 865 (4) (a) (686 SE2d 455) (2009).

