**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN, P. J., and BROWN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

March 4, 2021

# In the Court of Appeals of Georgia

A20A1950. THOMAS et al. v. ALLIGOOD et al.

A20A1951. OKEFENOKEE HEALTH, INC. v. THOMAS et al.

BROWN, Judge.

Willie Jean Thomas, individually and on behalf of the estate of her deceased husband, Robert Thomas, appeals from a judgment entered on a defense verdict in a case she brought against Dr. Eric Paulk, Dr. Tannis Alligood, BFP Equipment Corporation d/b/a Blackshear Family Practice, PC, nurse Monica Chandel, and Mayo Clinic Health System in Waycross, Inc. ("the hospital") asserting various claims for negligence, medical malpractice, and wrongful death in connection with a surgical procedure her husband underwent at the hospital. In Case No. A20A1950, Mrs. Thomas asserts that the trial court erred in its charge to the jury regarding the hospital's duty of ordinary care to furnish equipment and in admitting evidence that

the hospital was accredited by a joint commission as proof that it met its duty of care. She also contends that the hospital violated a motion in limine during its closing argument by referencing a party's financial condition. In Case No. A20A1951, the hospital contends that the trial court erred: (1) in denying its motion to dismiss based upon Thomas' failure to attach an expert affidavit; (2) denying its motion for partial summary judgment; and (3) denying its motion for a partial directed verdict. For the reasons explained below, we affirm in Case No. A20A1950 and dismiss as moot Case No. A20A1951.

In order to address the legal issues presented by the parties, we will briefly summarize the trial evidence regarding Mr. Thomas' care. On February 16, 2012, Mr. Thomas underwent a thyroidectomy at the hospital and was discharged to the medical/surgical floor of the hospital around 4:25 p.m. Mr. Thomas developed a massive hematoma on his neck at the site of his surgery, which is known to block a person's airway and prevent normal breathing. At 5:30 p.m., Dr. Alligood saw Mr. Thomas as part of her "normal daily rounds." Before she walked into the room, a nurse told her that Mr. Thomas "had complained of choking and his blood pressure was elevated." Dr. Alligood confirmed that Mr. Thomas could swallow and ordered blood pressure medication. A nurse noted that at 5:58 p.m., Mr. Thomas was "voicing

unable to breathe." At 6:05 p.m., a code blue was called, and Dr. Paulk, an emergency room physician, responded, arriving in Mr. Thomas' room at 6:08 p.m. By that time, Mr. Thomas was unresponsive and not breathing. Before he made it to Mr. Thomas' bedside, Dr. Paulk saw the large hematoma on his neck and asked for a glidescope, which is "a piece of equipment that is . . . [erg]onomically designed so that you can get in the airway, and it has a video camera on the end of it so that it gets a better view of the vocal cords." The hospital ordinarily kept glidescopes in the emergency room, operating room, or respiratory therapy. Nurse Chandel attempted to obtain a glidescope from respiratory therapy, which was located on the third floor of the hospital "no more than twenty steps" away from Mr. Thomas' room. As she looked unsuccessfully for the glidescope in respiratory therapy, others looked in the operating room and the emergency room. The glidescope arrived at the same time as anesthesiology (6:16 p.m.), and Mr. Thomas was intubated with it at 6:17 p.m. He died the following day, and his cause of death was listed as respiratory failure due to airway compromise.

1. Mrs. Thomas asserts that the trial court erred by failing to charge the jury "that the hospital owed a duty of ordinary care to furnish equipment reasonably suited to the uses intended." In its brief, the hospital contends, in part, that Mrs. Thomas

3

waived any objection to the charge given by the trial court and that the charge as a whole adequately covered the legal principle.

The record shows that Mrs. Thomas submitted a written request for the following pattern jury charge:

> A hospital owes to its patients the duty of using ordinary care to furnish equipment and facilities reasonably suited to the uses intended and such as are in general use under the same, or similar circumstances in hospitals of approximately the same size serving similar areas or communities.

This requested instruction (No. 13) was taken verbatim from the pattern charge for "Hospital - Degree of Care." Suggested Pattern Jury Instructions, Vol. I: Civil 62.320 (2020). At the beginning of a lengthy charge conference, the trial court indicated that it had already provided the parties with copies of the pertinent pattern charges, noted that most of the charges submitted by the parties were pattern charges, stated that "[t]here are some areas in the pattern charge that we need to either expand or clarify simply because of the nature of this case," and that most of their discussion would be related to requests "that are outside the pattern." It first reviewed with the parties the hospital's requests to charge. After reviewing the following request from the hospital (No. 28), the trial court commented that it was an expansion of the pattern charge :

4

> The standard to which a hospital is held is to provide through its employee's care consistent with the usual, customary methods of hospitals generally under the same or similar circumstances as presented by the patient in this case. In connection with the facilities and equipment which must be provided by a hospital, I charge you that the [h]ospital was obligated to provide those services and equipment which were customarily provided by hospitals of comparable size in communities compatible to that of the [h]ospital in February of 2012. If the [h]ospital exercises the degree of care I have defined, the hospital is not responsible in damages for a lack of success or honest mistakes or errors in judgment.

After Mrs. Thomas' counsel asserted that all of the concepts in the above charge were contained in the pattern, the trial court ruled that it would not charge the last sentence, but would "charge the rest of it in place of the pattern." Mrs. Thomas' counsel then compared the above charge to the pattern and pointed out to the judge that it actually was not the same because it did not include the pattern language that "[a] hospital owes to its patients the duty of using ordinary care to furnish equipment and facilities reasonably suited to the uses intended." After counsel reiterated her request for the pattern charge, the trial court stated again that it would give the hospital's No. 28. Counsel continued to object, stating that No. 28 said nothing about duty. When she asked the trial court if there was something wrong with the pattern charge she had

requested that concerned the trial court, it replied that "there's a critical issue that needs to be more fully explained than was in the pattern instruction." Mrs. Thomas' counsel then responded, "Okay. Well, . . . I do think since we're going to have ordinary care and I'm going to talk about ordinary care, that the duty of exercising ordinary care needs to be in whatever you charge." The trial court then moved on to discuss other proposed jury charges.

When the trial court later reviewed Mrs. Thomas' requested charges, there was no further discussion or objection made to the trial court's failure to give Plaintiff's Request No. 13 (the pattern charge). After the trial court instructed the jury, Mrs. Thomas' counsel stated, "we stand on our objections to the charge that we've stated during the charge conference." The trial court then agreed "those exceptions are preserved. . . ."

(a) As a preliminary matter, we disagree with the hospital's contention that Mrs. Thomas failed to properly object to the trial court's charge. She clearly raised the same objection in the charge conference that she now raises on appeal, and after it instructed the jury, the trial court agreed to allow her to preserve objections previously made in the charge conference. See *McDowell v. Hartzog*, 292 Ga. 300,

6

302 (736 SE2d 395) (2013) ("The purpose of OCGA § 5-5-24 (a)'s[1] specificity requirement is satisfied where, as here, after the charge is given, counsel references a previous objection for which the grounds were distinctly stated and that objection is noted by the trial court.").

(b) Mrs. Thomas asserts that the trial court's omission of language from the pattern charge was harmful because it "did not tell the jury that the hospital owed a duty of ordinary care to furnish equipment reasonably suited to the uses intended." In her view, "the jury was never provided with the correct lens through which to view the equipment claim" because she "conten[ded] that the hospital failed to comply with its duty not because it didn't have equipment, but rather because it did not use ordinary care in furnishing the equipment for its patient, i. e., making sure it was

---

[1] This Code section provides:

> Except as otherwise provided in this Code section, in all civil cases, no party may complain of the giving or the failure to give an instruction to the jury unless he objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury. Objection need not be made with the particularity formerly required of assignments of error and need only be as reasonably definite as the circumstances will permit. This subsection shall not apply in criminal cases.

7

available and could be found when urgently needed." In her view, the pattern charge would have informed the jury "that the duty is not merely to have equipment, but to use ordinary care to provide equipment reasonably suited for the uses intended, and in the case of emergency equipment like a glidescope, that would mean having that equipment readily available for use."

> In order for a trial court's refusal to give a party's written requested charge to be error, the request must be adjusted to the pleadings, law, and evidence, and not otherwise covered in the general charge. . . . Moreover, it is axiomatic that a jury charge need not be given in the exact language requested if the charge as given clearly covers the circumstances of the case.

(Citation and punctuation omitted.) *Ga. Dept. of Corrections v. Couch*, 312 Ga. App. 544, 551-552 (4) (718 SE2d 875) (2011). Additionally, "[e]ven though a request to charge may be apt, correct and pertinent, it is not necessarily error to fail to charge it. We must look to the charge as a whole to determine whether the court substantially covered the principles embodied therein or whether it was sufficiently or substantially covered by the general charge." (Citation and punctuation omitted.) Id. at 552 (4).

In this case, we find that no harm resulted from the trial court's failure to give the pattern charge requested by Mrs. Thomas. In addition to giving the charge that

8

"the [h]ospital was obligated to provide those services and equipment which are customarily provided by hospitals of comparable size in communities compatible to that of the [h]ospital in February of 2012," the trial court instructed the jury on the definition of ordinary negligence, as well as the plaintiff's burden to prove that a defendant was negligent in order to recover. Taken as a whole, we conclude that the trial court adequately instructed the jury that the hospital had to use ordinary care in making the equipment it furnishes available for use in an emergency, as compared to other hospitals of comparable size in comparable communities. While the pattern charge includes language about "equipment reasonably suited to the use intended," this language appears better suited for use in a case in which the equipment provided is alleged to be defective in some manner rather than being unavailable when needed in an emergency. See, e.g., *Lamb v. Candler*, 262 Ga. 70, 71 (1) (413 SE2d 720) (1992) ("It is well recognized that a hospital may be liable in ordinary negligence for furnishing defective equipment for use by physicians and surgeons in treating patients."). In this case, the unavailability issue was adequately covered by the charges, taken as a whole, that were given by the trial court.

2. Mrs. Thomas contends that "[t]he trial court erred in admitting evidence that the hospital was accredited by the Joint Commission [on Accreditation of Healthcare

9

Organizations] as proof that it met its duty of care." The record shows that prior to trial, the parties exchanged trial exhibits and submitted written objections to the trial court. Mrs. Thomas objected to the hospital's Exhibit 15 labeled "Joint Accreditation Certificates," stating:

> There has never been any allegation regarding the hospital's accreditation. Thus, the accreditation certificates are irrelevant to any matter at issue in this case and should not be admitted. Further, the accreditation is purely meant as evidence of the hospital's "good character" which should be excluded.

When the case was called for trial, the trial court heard argument regarding this evidence and ruled that the certificates could be admitted. When Mrs. Thomas' counsel raised the issue of how the certificates would be admitted because they should not be considered self-authenticating like a medical record, the trial court stated, "[t]hat's a separate issue." The trial court then ruled admissible designated portions of a deposition in which a witness provided "opinion testimony regarding the hospital's bylaws, accreditation, et cetera." This deposition testimony was not actually presented during the trial. At no point during the discussion of whether the certificates should be admitted did Mrs. Thomas' counsel object on the ground that

10

the certificates were being improperly admitted to show that the hospital met its duty of care.

The hospital asked nurse Chandel questions relating to the hospital's certification following cross-examination by Mrs. Thomas. Nurse Chandel testified that she was familiar with the "Joint Commission of Accreditation of Hospital," that they would "come in and do a site inspection and go through the hospital and check out things and then make a determination if they were going to certify the hospital or not," and that the hospital was accredited by the "National Association of the Joint Commission of Accreditation of Hospitals." Mrs. Thomas' counsel voiced no objection to this testimony.

The hospital's expert witness, Dr. Freida Payne, testified about the hospital's accreditation as well, explaining that the "Joint Commission is a group that is used by hospitals to accredit whether they meet the standards and to assure that the public gets quality of care in the facility that's accredited by the Joint Commission." She described it as "a very thorough process" in which they "go around and check things in the hospital . . . for days," and agreed that this included "checking things like crash cart and what's on the crash cart and where it's located and things like that." She stated that she had seen the Commission be particular about people knowing where

11

a code or crash cart is located "and that it's a[cc]ess[i]ble and that people know what's in it." She agreed that "if the Joint Commission is satisfied with things like what kind of equipment is and where it is and how people can get to it," it certifies that hospital. Finally, she reviewed an exhibit stating that the hospital "was certified and accredited on March 6th, 2010" for a period of 39 months, which would have included the time Mr. Thomas was treated at the hospital and died. Mrs. Thomas' counsel voiced no objection to this testimony.

At the conclusion of the testimony presented by all parties, the parties and the trial court went over the admission of trial exhibits outside the presence of the jury. When the hospital tendered "Okefenokee's Exhibit 15, . . . the JCAHO certification," Mrs. Thomas' counsel objected. After some discussion between counsel and the trial court about whether the exhibit had been properly identified and authenticated or could be considered self-authenticating, Mrs. Thomas' counsel suggested the trial court proceed with the charge conference and allow the parties to brief the issue.[2] While the record contains briefs from the parties on the admissibility of the

---

[2] At one point during the discussion, Mrs. Thomas' counsel asked, "So, he is trying to use it as evidence of compliance with the standard of care?" After the trial court responded in the affirmative, Mrs. Thomas' counsel stated "[t]here is no standard of care relating to the glidescope . . ." before being interrupted by the trial court. This particular issue was not raised again during the trial.

certificates, Mrs. Thomas' brief provides no citation to the record showing a ruling on the issue, even though she asserts that the trial court ruled before closing arguments took place that the exhibit would be admitted. The court reporter's index to trial exhibits in the official transcript states that Defendant Hospital's Exhibit 15 was not admitted, and our review of the transcript and the record fails to show a ruling on the admissibility of this exhibit following Mrs. Thomas' objection at trial or that a copy of the exhibit was made a part of the record.

During closing argument, the hospital's attorney stated the following:

The duty is to provide equipment. That is what the charge the judge is going to charge you. In this case, we had the equipment. Our duty was to have the equipment and we had it, simple.

The judge is not going to charge you that we have a duty to have it in some particular place. The judge is not going to charge you that we somehow should have gotten it there before anesthesia did.

That is not the duty. The duty is that we have it and we met that duty. We know that we met that duty because you heard the discussions about the joint commission.

You heard that (inaudible) we got the duty because everybody agreed that we had (inaudible), right? But you also heard that the joint

13

commission is an organization that comes in and checks hospitals for things like this and they do a very thorough inspection.

And if you don't have a piece of equipment you're supposed to have, then you don't get certified. And yet, here we are. In 2010, we received certification for three years.

Mrs. Thomas' counsel voiced no objection to this argument.

(a) As a preliminary matter, we must determine whether we can properly consider the merits of Mrs. Thomas' claim that the trial court improperly admitted evidence related to the hospital's certification "as proof that it met its duty of care." With regard to the certification exhibit, nothing in the record before us shows that this exhibit was admitted into evidence.

An appellant has the burden of proving trial court error by the appellate record, and must compile a complete record of what transpired in the trial court. Otherwise, there is not sufficient information for an appellate court's review and the trial court ruling enumerated as error must be upheld. When a portion of the evidence bearing upon the issues raised by the enumerations of error is not brought up in the appellate record so that this court can make its determination from a consideration of it all, an affirmance as to that issue must result.

(Citation and punctuation omitted.) *Black v. State*, 309 Ga. App. 880, 882 (1) (711 SE2d 428) (2011). If the exhibit was indeed admitted as asserted in Mrs. Thomas' brief, her counsel should have sought to complete the record under OCGA § 5-6-41 (f), which provides a method by which parties can correct or complete a transcript or record. "[I]n cases in which the appellant does not move to have the record completed under OCGA § 5-6-41 (f), we will find that there is nothing for this court to review in the appellate record and that we are bound to assume that the trial court ruled correctly." (Citation and punctuation omitted.) *Chernowski v. State*, 330 Ga. App. 702, 708-709 (1) (769 SE2d 126) (2015). Based upon the foregoing, we find no merit in Mrs. Thomas' claim that the trial court erred by admitting the hospital's certification into evidence.

(b) To the extent that Mrs. Thomas' brief can be construed as asserting that error resulted from the nurse and expert testifying about the circumstances surrounding the hospital's certification, we must consider whether she has preserved this issue for appeal. As noted previously, Mrs. Thomas asserted no objections to the testimony during the trial. And, even if we were to assume, without deciding, that the objections she made to the admission of the certificates before the trial began should

15

be applied to testimony regarding such certificates under OCGA § 24-1-103 (a),[3] any

such error was waived based upon her failure to object on the ground she asserts for

the first time on appeal.

> To preserve a ground for error, the objecting party must state the specific ground upon which the objection is based. The trial court must have the opportunity to be fully informed of the error and to rule on it. When the specific ground of objection is not made at the time the evidence is offered, the failure to do so amounts to a waiver of that specific ground. Objections made at trial cannot be modified or expanded for the first time on appeal.

(Citations and punctuation omitted.) *Powell v. State*, 335 Ga. App. 565, 568 (2) (782

SE2d 468) (2016).

The only objections made to the admission of the certificates before the

testimony at issue were: (1) relevance because the case involved no allegations

"regarding the hospital's accreditation"; (2) improper good character evidence; and

(3) the proper method to authenticate the certificates. As none of these objections

were sufficient to notify the trial court that Mrs. Thomas also objected on the ground

---

[3] This Code section provides, in pertinent part: "Once the court makes a definitive ruling on the record admitting or excluding any evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve such claim of error for appeal."

16

that the certification was being used to prove that the hospital met its duty of care, this issue has been waived. Our analysis does not end here, however, because the plain error provision of the Evidence Code "establishes that nothing in [OCGA § 24-1-103] shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court." *Chrysler Group v. Walden*, 303 Ga. 358, 369 (II) (B) (812 SE2d 244) (2018).[4]

(c) In order to demonstrate plain error based upon the admission of evidence,

an appellant must show an error or defect that has not been "affirmatively waived" by the appellant, that is "clear or obvious," and that "affected the appellant's substantial rights" by "affect[ing] the outcome of the trial court proceedings"; if these three requirements are

---

[4] We note that three justices concurred in the judgment only as to Division II (B) of *Chrysler Group*, and that two additional justices concurred specially in this division because it went "much further" than was necessary to decide the case "and often with sweeping language that travels far beyond [the] case." *Chrysler Group*, 303 Ga. at 372 (Peterson, J., concurring specially). Nothing in the Georgia Supreme Court Rules specifies the impact of five justices concurring specially or in the judgment only. Compare Georgia Supreme Court Rule 58 (silent on impact of special concurrences or concurrence in the judgment only) with Georgia Supreme Court Rule 59 ("Rule 59 cases [issued without opinion] have no precedential value"). See also OCGA § 15-2-16 (a) ("In all cases decided by the Supreme Court, the concurrence of a majority of the Justices shall be essential to a judgment of reversal. If the justices are evenly divided, the judgment of the court below shall stand affirmed. In all cases decided by the court, with at least a quorum but less than nine Justices, the concurrence of at last five shall be essential to the rendition of a judgment.").

satisfied, we have the discretion to remedy the error but should do so only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

(Citation omitted.) *Chrysler Group*, 303 Ga. at 370 (II) (B). In *Chrysler*, Justice Grant, joined by three other justices, wrote that "the context of civil litigation often differs from the context of criminal prosecution; actual application of the plain-error standard takes account of the differences." Id. at 369 (II) (B), n.4. Although the opinion "decline[d] to establish a specific boundary," it advised that "because civil cases do not ordinarily invoke the violation of a constitutional right or the denial of liberty it is far less likely that plain error will be identified in the civil context." Id.

In this case, even if we assume, without deciding, that testimony regarding the hospital's certification was inadmissible, we cannot say that the admission of such evidence "affected the appellant's substantial rights by affecting the outcome of the trial court proceedings." (Citation and punctuation omitted.) *Chrysler Group*, 303 Ga. at 370 (II) (B). The certification inspection took place two years before the events at issue, and the fact that the glidescope was not in its regular location, where it was presumably located during the earlier inspection, mitigates against a conclusion that evidence that the hospital was inspected and certified resulted in a defense verdict.

18

3. Mrs. Thomas contends that she is entitled to a new trial because the hospital's attorney violated a motion in limine precluding closing argument regarding a party's financial condition.[5] The hospital asserts that there was no court order regarding the parties' financial circumstances, that Mrs. Thomas' counsel failed to object during closing argument, and that its argument was not a comment on any party's financial circumstances.

(a) We must first consider whether the trial court ruled that argument regarding the parties' financial circumstances was prohibited. The record shows that while Mrs. Thomas filed two motions in limine before trial, neither sought to preclude evidence or argument related to the financial circumstances of any party. Dr. Paulk filed a motion in limine seeking to exclude "[e]vidence regarding the relative worth or financial circumstances of the parties." The nurse and the hospital also filed a joint motion in limine asserting that "[e]vidence of a party's or a witness's financial circumstances should not be presented to the jury" and that the trial court "should exclude any reference, argument, or testimony regarding the parties' current or future financial condition." In her brief responding to the defendants' motions in limine,

---

[5] Mrs. Thomas does not assert that she is entitled to a new trial because the trial court failed to fulfill a duty created by OCGA § 9-10-185.

19

Mrs. Thomas stated that she agreed with the portion of the motions regarding the parties' financial circumstances "provided this motion applies equally to all parties."

During a pre-trial hearing, the trial court went through each motion "item by item . . . because there's not consensus on everything." When the trial court raised "relative worth" in connection Dr. Paulk's motion in limine, Mrs. Thomas' counsel quickly stated that she "agreed," and the trial court moved on to the next issue without stating an express ruling. With regard to the nurse/hospital's joint motion regarding financial circumstances, the trial court ruled "[n]umber 8, financial circumstances, not admissible." In a subsequent written order issued before the trial, the trial court also stated that it had previously "announced rulings on all those motions except for those contained in Motion number 1 and Motion 13 as filed by [the nurse and the hospital]." Based upon this record, it appears that the trial court issued a definitive ruling on the hospital's motion in limine. See OCGA § 24-1-103 (a). It made an oral ruling that financial circumstances (number 8 of the hospital's motion in limine) was inadmissible, the hospital's motion stated that it would apply to *any* testimony or argument related to *any* party's financial circumstances, and the trial court's subsequent written order on two different issues, which was entered before trial, stated that it had already announced a ruling on this issue in the hospital's

motion in limine. Based upon our holding in Division 3 (d) of this opinion, infra, however, we will only assume, without deciding, that the trial court issued a definitive ruling precluding closing argument about the financial circumstances of any party.

(b) We next consider the hospital's assertion that the issue has been waived based upon Mrs. Thomas' failure to object to the hospital's argument during closing. It appears from our existing case law that if we determine that the hospital's argument violated the trial court's definitive ruling on the motion in limine, it was not necessary for Mrs. Thomas to make a contemporaneous objection during the argument to preserve this issue for appeal. *Central of Ga. R. Co. v. Swindle*, 260 Ga. 685, 687 (398 SE2d 365) (1990);[6] *Harvey v. Williams*, 354 Ga. App. 766, 769 (1) (a) (841 SE2d 386) (2020). We take note, however, that the Supreme Court of Georgia has granted certiorari in *Harvey* and is "particularly concerned" with the issue of "[w]hether a party must object to argument of counsel that allegedly violates a granted motion in limine in order to preserve the issue for appeal[.]" *Williams v.*

---

[6] The Court of Appeals opinion which the Supreme Court of Georgia reversed in *Swindle*, supra, makes clear that no objection was lodged during a closing argument that violated the grant of a pre-trial motion in limine. *Central of Ga. R. Co. v. Swindle*, 194 Ga. App. 24, 25 (2) (389 SE2d 779) (1989).

21

*Harvey*, 2020 GA LEXIS 790 (Case No. S20C1121, decided October 19, 2020). The advisory committee notes to Federal Rule of Evidence 103 (b), which contains language nearly identical to that found in OCGA § 24-1-103 (a) regarding the preservation of error following a definitive ruling, state that "if the opposing party violates the terms of the initial ruling, objection must be made when the *evidence* is offered to preserve the claim of error for appeal." (Emphasis supplied.) Fed. R. Evid. 103, Advisory Committee Notes, 2000 Amendments. Professor Milich has also advised that "[w]hile it is not certain that Georgia appellate courts will follow the federal approach in this matter, counsel is well advised to alert the trial court promptly when a violation of the in limine ruling occurs with a motion for relief at sidebar." Paul S. Milich, Georgia Evidence, § 3.6 (2019). As we must decide this case before the Supreme Court of Georgia must issue an opinion in *Harvey*, we will assume, without deciding, that there was no need for Mrs. Thomas to promptly object when the hospital violated the motion in limine.

(c) The record shows that in response to the closing argument of Mrs. Thomas' counsel characterizing hospital staff running "like Keystone cops when somebody is dying, trying to find the equipment that the doctors need," the hospital argued:

Did you see any evidence at all that any of these people — Monica Chandel, Dr. Alligood, Dr. Paulk, all the nurses, all the RT, the RAT team, the code team — did you hear any evidence that they were not well qualified?

That they were not experienced? That they didn't know what they were doing? Did you hear [any] evidence that any of them panicked in the code? They're not a bunch of Keystone [c]ops. That's insulting. They're trained professionals who have devoted their lives to taking care of people.

They're not out getting rich doing it, but it's their life's work.

We agree with Mrs. Thomas' contention that an argument that the defendants were not "getting rich" taking care of people violates a motion in limine precluding argument about a party's financial circumstances. Our analysis does not end here, however, as we must also evaluate harm.

(d) Relying upon the Supreme Court of Georgia's decision in *Chrysler Group*, Mrs. Thomas asserts that "[c]omments on the wealth of a party have repeatedly and unequivocally been held highly prejudicial, and often alone has warranted reversal." 303 Ga. at 366-367 (II) (A). In *Chrysler Group*, the Supreme Court of Georgia held that "Georgia's common law rule relating to the relevance of party-wealth evidence

23

is no longer independently in force" and that a "blanket ban" is no longer appropriate. Id. at 365 (II) (A), 367 (II) (A). Instead, "a fact-specific analysis" should be conducted under OCGA § 24-4-403 to determine if the unfair prejudice of the evidence outweighs its probative value. Id. at 367 (II) (A). It carefully noted, however, that "it is frankly quite difficult to see how [party-wealth evidence] would be relevant in nearly any case, at least not involving punitive damages." Id. at 366 (II) (A).

In Georgia, the standard for evaluating whether evidence or argument regarding a party's wealth requires reversal is not well developed, and decisions appear to be made on a case-by-case basis. See, e.g., *Seay v. Urban Medical Hosp.*, 172 Ga. App. 344, 346 (3) (323 SE2d 190) (1984) ("Under these circumstances we cannot say as a matter of law that the improper admission and use of this evidence did not influence the verdict of the jury."); *Bob Maddox Dodge v. McKie*, 155 Ga. App. 263, 264 (3) (270 SE2d 690) (1980) ("after a review of the objectionable question and answer, we do not find the evidence so prejudicial as to require reversal"). Although the Supreme Court of Georgia stated in *Chrysler Group* that comments on financial condition often warrant reversal, there is no rule mandating prejudice or harm as a matter of law.

24

In this case, the hospital's passing statement during closing argument[7] that the defendants were not "getting rich" while taking care of people was not linked to any argument about whether the defendants should be found liable, their ability to pay any judgment, the amount of damages which should be awarded by the jury, the relative wealth of the parties, or any improper evidence of their financial condition. Instead, counsel went too far while responding to an argument made in Mrs. Thomas' closing in a case in which four attorneys argued for approximately four hours total, and Mrs. Thomas' counsel argued last. In its charge to the jury immediately after closing arguments, the trial court instructed the jury that

> [its] verdict should be a (inaudible) based upon the opinion of the evidence according to the laws given to you in this charge. You're not to show favor or sympathy to one party or the other. It is your duty to consider the facts objectively without favor, affection or sympathy to any party.
>
> In deciding this case, you should not be influenced by sympathy or prejudice, because of race, creed, color, religion, national origin, residence, economic or corporate status for or against any party.

---

[7] The hospital's closing argument is recorded on 29 pages of the trial transcript, and the improper portion occurred on the 18th page.

25

Based upon the particular facts and circumstances of this case, we cannot say that the isolated remark in a case in which the trial court also gave a sympathy charge was so prejudicial as to require a new trial.

4. The enumerations of error in Case No. A20A1951 are only properly addressed in the event that Mrs. Thomas was successful in the main appeal. Based upon our resolution of Case No. A20A1950, the cross-appeal is moot.

*Judgment affirmed in Case No. A20A1950; Case No. A20A1951 dismissed as moot. Dillard, P. J., and Rickman, P. J., concur.*